## Fairmount and Arch Street Passenger Railway Company *versus* Stutler.

1. The implied contract of a railway company to carry a passenger safely includes the duty of giving him a reasonable opportunity to alight in safety.

2. At law, a mother has no implied right to the services of her minor child, she not being bound for his maintenance.

3. The relation of mistress and servant can be constituted between mother and child, only as it may be done between strangers in blood, except that less evidence might establish it.

4. The mother's right to an action for injury to her child cannot be rested on her liability for his support under the poor laws.

5. Actions by parents or masters for seduction, &c., *per quod servitium amisit*, are founded in pure wrong upon the rights of the master in the person of the servant, for which trespass or case will lie.

6. For torts springing from contract which consist in a mere omission of a contract duty, no legal remedy exists except by an action on the case, which must be by the party injured and cannot be by the master.

7. A minor may contract for his own benefit, and as this power is limited to his necessities and advantages, his contracts cannot enure to the benefit of another.

8. A minor, having no father, but living with his mother, and by his labor contributing to her support, was a passenger on a railway car and paid his fare. He was injured by the negligence of the company's servants, and was provided with medical attendance, nursed and supported by his mother: *Held*, that the contract to carry safely was with the minor; that the mother was a stranger to it, and she could not recover for the injury.

February 21st 1867. Before WOODWARD, C. J., THOMPSON and STRONG, JJ. READ, J., sick. AGNEW, J., at Nisi Prius.

Error to the District Court of *Philadelphia*.

This was an action on the case, commenced July 14th 1864, by Elizabeth Stutler against The Fairmount and Arch Street Passenger Railway Company.

The declaration alleged that the defendants were common carriers of passengers owning a car in which James Stutler, the plaintiff's son, was riding and being carried for hire, and that the company by their servants, &c., "so carelessly and improperly drove the horses and car that, by the carelessness, negligence and improper conduct of the company by their servants," &c., James Stutler was, with force and violence, thrown from the platform of the car, &c., and was greatly bruised, hurt and wounded, &c., "and for eight months suffered great pain and was hindered and prevented from performing and transacting for the plaintiff the duties and lawful affairs and business devolving upon him as the son of the plaintiff, and by reason of said injuries still is and always will be unable to perform and transact for the plaintiff the duties, &c., devolving on him as her son, and also by means of the premises the plaintiff was obliged to pay a large sum of money in endeavoring to have her son healed," &c. The defendants pleaded "Not guilty."

.[Passenger Railway Co. *v.* Stutler.]

The evidence from the son was, that he got on a car of the defendants and paid his fare, and having ridden some distance he asked the conductor to let him off and the car had stopped; that whilst he had one foot on the step the conductor pulled the bell and the car started, which threw him on the track, another car coming down ran over him and his thigh was broken, and that he had been supported at his mother's house during all the time since the hurt. He also testified that at the time of the occurrence he was about nineteen years old; that he lived with his mother; that he was just out of employment at the time; that he was then on his way to seek employment; that what he made when in employment went to his mother; and that he had not been able to contribute any aid at all to her since the accident. There was other evidence also of his having lived with his mother and contributed to her support.

Amongst other points the defendants submitted the following :—

3. The foundation of the action is the loss of service, and the plaintiff cannot recover unless the relation of master and servant existed.

5. The mother was not bound in law to provide her son with necessaries or medical attendance, and she can recover nothing in this action on account thereof.

Hare, A. J., in his charge said: "It seems to me that there is evidence in this case in the point of view in which I leave it to you, that there is a loss to the mother for which she may be entitled to receive compensation to the extent of the necessary expenditure for the food or clothing of her son ,or the necessary support which she extended to him down to the period when he reached his age of twenty-one years, from which time it must necessarily close."

In answer to the 3d point he said: "That is the rule of law; at the same time I also say that as the question—whether there is such evidence of the relation of master and servant in this case— has been reserved, you may consider there is such evidence." He also declined to charge as requested in the 5th point, and reserved the question whether the mother was under the obligation stated in it.

There was a verdict for the plaintiff for $1700. The court afterwards entered judgment for the plaintiff on the points reserved.

The errors assigned were the portion of the charge above quoted, and entering judgment on the reserved points.

*S. Dickson*, for plaintiffs in error, cited Acts of June 16th 1836, § 28, Purd. 799, pl. 33, Pamph. L. 545; April 15th 1857, § 1, Pamph. L. 198; Kelly Township *v.* Union Township, 5 W. & S. 536; Bownes *v.* Marsh, 10 A. & E. N. S. (59 E. C. L.) 787;

[Passenger Railway Co. v. Stutler.]

Cameron v. Baker, 3 C. & P. 36 ; Fenille v. Crowther, 7 Dowl. & Ry. 612 ; Moncrief v. Ely, 19 Wend. 405 ; Wiggins v. Keizer, 6 Porter (Ind.) 252 ; Pittsburg and Steubenville Railroad Co. v. Gazzam, 8 Casey 340 ; Alton v. The Midland Railway Co., 11 Jur. N. S. (1865) 672 ; 1 Wms. Saund. 291 ; Langridge v. Levy, 2 M. & W. 519 ; Winterbottom v. Wright, 10 Id. 109 ; Commonwealth v. Murray, 4 Binn. 487 ; South v. Denniston, 2 Watts 474 ; Logan v. Murray, 6 S. & R. 175 ; George v. Van Horn, 9 Barb. 523 ; Vossel v. Cole, 10 Mo. 634 ; Leech v. Agnew, 7 Barr 21 ; Rex v. Greenhill, 4 A. & E. 624 ; State v. Scott, 10 Foster 274 ; State v. Stigoll, 2 N. J. 286 ; Gishwiler v. Dodez, 4 Ohio St. 615 ; Worcester v. Marchant, 14 Pick. 510 ; Loomis v. Chine, 4 Barb. S. C. Rep. 403 ; Evans v. Booth, 8 A. & E. N. S. 718 ; Stephenson v. Hall, 14 Barb. 222 ; Pennsylvania Railroad Co. v. Kelly, 7 Casey 372 ; 2 Kent 208 ; Mills v. Wyman, 3 Pick. 207 ; Cook v. Bradley, 7 Conn. 57 ; Carr v. Clarke, 2 Chit. 260 ; Posthlewaite v. Parkes, 3 Burr. 1877 ; Saterwaite v. Duerst, 4 East 147 ; Harris v. Butler, 2 M. & W. 539 ; Nichol v. Martyn, 2 Esp. 734 ; Boulter v. Webster, 13 W. R. 289 ; 11 L. T. N. S. 598 ; Middleton v. Fowler, 1 Salk. 282 ; Tollit v. Shestone, 5 M. & W. 283 ; Langridge v. Levy, 2 Id. 519 ; 4 Id. 337 ; Farrant v. Barnes, 103 E. C. L. 553 ; Godley v. Haggerty, 8 Harris 387 ; Carson v. Godley, 2 Casey 111 ; Scott v. Shepherd, 2 Blackst. 992 ; 1 Smith's L. C. 210 ; Winterbottom v. Wright, 10 M. & W. 109 ; Jones v. Bright, 5 Bing. ; Boorman v. Brown, 3 Q. B. (43 E. C. L.) 511 ; Howard v. Shepherd, 9 C. B. (67 E. C. L.) 297 ; Ingalls v. Bills, 9 Metc. 1 ; Longmeid v. Holliday, 6 Exch. 761 ; Railroad Co. v. Derby, 14 How. 468 ; Dryburg v. Telegraph Co., 11 Casey 298 ; Oliver v. Oliver, 103 E. C. L. 139 ; Maher v. Ashmead, 6 Casey 344 ; Hadley v. Cross, 34 Vt. (5 Shaw) 586 ; Livingston v. Cox, 6 Barr 362 ; Wright v. Leonard, 103 E. C. L. 238 ; Keen v. Hartman, 12 Wright 497.

*R. E. Brown* and *D. P. Brown*, for defendant in error, cited Pennsylvania Railroad v. Kelley, 7 Casey 372 ; Act of Assembly, 16th June 1836, *supra ;* 1 Bl. 448, and notes ; Bennett v. Allcott, 2 T. R. 167 ; Irwin v. Dearman, 11 East 24 ; Edmundson v. Machell, 2 T. R. 4 ; Stark. on Ev. 989 ; Reeves on Dom. Relations 292 ; Martin v. Payne, 9 Johns. 390 ; Fores v. Wilson, Peake's N. P. R. 77 ; Hall v. Hollander, 4 B. & C. 438 ; Sargent v. ——, 5 Cowen 106 ; Commonwealth v. Murray, 4 Binn. 487 ; South v. Denniston, 2 Watts 474 ; Leech v. Agnew, 7 Barr 21 ; Logan v. Murray, 6 S. & R. 175 ; Coon v. Moffitt, 2 Penn. (N. J.) 583.

The opinion of the court was delivered, May 13th 1867, by WOODWARD, C. J.—This was an action by a widowed mother

[Passenger Railway Co. *v.* Stutler.]

for an injury inflicted upon her minor son. The tort complained of did not consist in personal violence wantonly inflicted, but resulted from negligent performance of a contract which the railway company had assumed, to carry the son safely as a passenger. He entered one of their cars as it was going up Arch street, and in the act of leaving it a premature start of the car precipitated him under another of their cars which at the moment was passing down the street, and he was badly hurt. The proof was, that he had paid his fare. The implied contract to carry safely included the duty of giving him a reasonable opportunity to alight in safety from the car, and if the company violated this part of their duty, it was culpable negligence for which an action would lie. But as the contract was made with the minor and for his benefit, can the mother maintain an action for the tort growing out of it? This is the only question upon the record.

The son, a young man eighteen years of age, lived with his mother, and occasionally earned money for her by small jobs of labor, and she nursed him after he was hurt, and furnished medical attendance. The evidence was sufficient, had the action been by a father, to establish the relation of master and servant, and it is in right of such a relation, rather than in her character of parent, that the mother claims damages in this action. There was no evidence of an express contract between the mother and son by which she was entitled to his services, and at law she has no implied right to them.

A father is bound by law to support and educate his children, and is entitled to the correlative right of service, but a mother not being bound to the duty of maintenance, is not entitled to the correlative right of service, and the relation of mistress and servant can be constituted between them only as it may be constituted between strangers in blood, save that less evidence would perhaps be sufficient to establish it: South *v.* Denniston, 2 Wright 477; Leech *v.* Agnew, 7 Barr 21.

By the Act of 16th June 1836, the mother of every poor person not able to work, if she be of sufficient ability, may be charged to relieve such poor person at a rate to be prescribed by the Court of Quarter Sessions, under pain of forfeiting a sum not exceeding twenty dollars a month; but her right to such an action as the present cannot be rested upon this contingent liability. It is true that the injury her son received increases the probability of his becoming chargeable upon her under the statute, but no liability has yet attached, and no statutory proceeding has been instituted. If the action was grounded upon such a statutory liability, it would be set forth in the declaration, and the damages would be limited to the statutory measure. In actions for seduction, where the loss of service is the gist of the action, the cases have gone very far in implying a right of service from very slight evidence

[Passenger Railway Co. *v.* Stutler.]

of service, and that in favor of either parent, or of any one else standing in *loco parentis*. Yet in Logan *v.* Murray, 6 S. & R. 170, where the daughter had come pregnant into the mother's service after the death of her father, in whose service she had been debauched, this court refused to recognise the constructive relation of mistress and servant between the mother and daughter, though the latter was actually assisting about household duties, and the mother defrayed the lying-in expenses. And again, in South *v.* Denniston, where the seduction took place after the death of the father and while the daughter was out at service, the mother was denied her action. But here a distinction is to be taken between torts. Actions for seduction, like actions by parents or masters for batteries, *per quod servitium amisit*, are founded in pure wrong, are wilful trespasses upon the rights of the master in the person of the servant, for which, according to the English cases, either trespass or case will lie : Destcham *v.* Burd, 3 Mau. & Selw. 436 ; Woodward *v.* Walton, 2 N. Y. R. 476 ; Chamberlain *v.* Hazlewood, 5 M. & W. 515. With us the action is commonly case, *per quod*, for seduction of a daughter or injury of a son ; though in Ream *v.* Rank, 3 S. & R. 215, and West *v.* Vickers, 8 Wright 227, it was intimated that if the minor child be living in the father's house at the time the injury is done trespass is the more proper remedy, but if out of it, case.

Torts that spring from contract, that consist in mere omission of a contract duty, are strongly distinguished from the above class of wrongs, and for these no legal remedy exists except by an action on the case, and in this class of cases the action must be by the party injured, and cannot be brought by the master or mistress. The late case of Alton *v.* The Midland Railway Co., reported in the Jurist of August 1865, p. 672, is full to the point. It was an action on the case against a railway company for carelessly carrying the servant of the plaintiff, one Charles F. Baxter, whereby he was injured and the plaintiff lost his services. Plea that the defendants contracted with the said Baxter and that they did not contract with the plaintiff. Demurrer to the plea. The case was very fully argued upon the authorities, and Erle, C. J. of Common Pleas, in the course of his opinion, said : " I take the law to be clear that where a master loses his servant's services by an act *ex delicto* the master has a right of action for the loss he has sustained. But in all cases where the master has recovered the injury has arisen from a wrong ; and there is no instance where damages have been given in breach of a contract. Looking at all the authorities there is not one in which the master recovered for a consequential damage in a contract between the servant and the defendant." Equally emphatic and precisely to the same effect were the *seriatim* opinions of Willes, Byles and Smith, Justices.

[Passenger Railway Co. *v.* Stutler.]

It occurred to me that the only ground upon which our case could be distinguished from the above was the infancy of the servant, it not appearing that the servant in that case was an infant, and I examined several of the authorities referred to by the counsel in that case and of which the judges spoke so confidently, without finding one where the party injured was a *minor* servant. It would seem, so far as I have been able to look into the English cases, that they make no account of the circumstance of infancy. And, perhaps, upon principle none ought to be made, for a minor is competent to contract for his own benefit, and as his contracting power is limited to his necessities and advantages his contracts cannot possibly enure to the benefit of another. This young man might lawfully hire his passage by a public conveyance, and may assert all the rights accruing to him out of the contract; but it was not a contract with his mother nor one that enured to her benefit.

The duty to carry him safely was a duty which the company owed to *him*, and, said Byles, J., in the case cited from the Jurist, "the law is clear and it would lead to alarming consequences if it were otherwise, that no man can bring an action for breach of duty but for a breach of duty to himself."

Thus, then, this case stands—an action by a mother who has no common-law right to the services of her son and no special contract which constitutes her his mistress. But if she really stood in that relation to him, her action is founded upon breach of a contract to which she was a stranger and which was not made in her service, as that in Alton's case was made in the course of the master's business. It belongs not to the category of actions for seduction, and no precedent has been shown to justify it, whilst the English judges declare that in that country, so fertile in precedents, not one exists for such an action. When to these considerations we superadd the legislation which, both in England and in this country, has been necessary to give mothers a right of action for negligence that causes the death of a child, it seems very obviously our duty to declare that the action ought not to have been sustained and that the judgment must be reversed.