### AMERICAN STEEL & WIRE CO. v. TYNAN et al.

#### (Circuit Court of Appeals, Third Circuit.   January 28, 1911.)

#### No. 81 (1,246).

**1.** JUDGMENT (§ 256*)—FORMAL REQUISITES—CONFORMITY TO STATUTE.

Under Act Pa. May 12, 1897 (P. L. 62), which provides that, when a right of action for a wrongful injury to the person of a child shall accrue to the child and also to the parent, a single action shall be brought in the names of both, in which separate verdicts shall be returned determining the right of each and separate judgments entered thereon, a single judgment rendered in such a case for the sum of the two separate verdicts cannot be sustained in view of the plain requirement of the statute.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446–454; Dec. Dig. § 256.*]

**2.** MASTER AND SERVANT (§ 286*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—UNSAFE PLACE TO WORK.

Where a minor servant was required by the master to work on an elevated platform supported at one corner by a rope which had been in use for a year without inspection, and the rope broke, causing the employé to fall and receive an injury, there was sufficient evidence of the master's negligence to warrant the submission of that question to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050; Dec. Dig. § 286.*]

**3.** PARENT AND CHILD (§ 7*)—RIGHT OF MOTHER TO SUE FOR INJURY TO MINOR CHILD.

Under the common law as ruled in Pennsylvania, a mother has no right of action for an injury to a minor son not resulting in death.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. § 91; Dec. Dig. § 7.*]

**4.** PARENT AND CHILD (§ 7*)—RIGHT OF MOTHER TO SUE FOR INJURY TO MINOR CHILD—PENNSYLVANIA STATUTE.

Act Pa. June 26, 1895 (P. L. 316), relating "to husband and wife who are the parents of minor children, enlarging and extending the power, control and authority of the mother over their minor children under certain circumstances," provides in section 1 "that hereafter a married woman who is the mother of a minor child, and who contributes by the fruits of her own labor or otherwise toward the support, maintenance and education of her said minor child, shall have the same and equal power, control and authority over her said child and shall have the same and equal right to its custody and services as is now by law possessed by her husband, who is the father of said minor child." As construed by the

---

Supreme Court of the state, such provision gives a wife and mother the right to sue for injury to her minor child when she has been deserted by her husband and was supporting the child at time of the injury; but it cannot be given a construction broad enough to authorize such an action by a mother who became a widow and has married again, and who was not contributing to the support of the minor at the time of his injury.

[Ed. Note.—For other cases, see Parent and Child, Dec. Dig. § 7.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by Charles Tynan and another against the American Steel & Wire Company. Judgment for plaintiffs, and defendant brings error. Reversed in part.

W. A. Seifert and Samuel McClay, for plaintiff in error.
Thos. M. & Rody P. Marshall, for defendants in error.

Before GRAY and LANNING, Circuit Judges, and J. B. McPHERSON, District Judge.

J. B. McPHERSON, District Judge. In the present suit, which was brought to recover damages for personal injury suffered by Charles Tynan, a minor servant of the American Steel & Wire Company, the minor and his mother were joined as plaintiffs. This procedure is directed by the Pennsylvania act of May 12, 1897 (P. L. 62), which provides, in its first section, that:

"Whenever any injury, not resulting in death, shall be wrongfully inflicted upon the person of a child, and a right of action for such wrongful injury accrues to the child and also to the parent, these two rights of action shall be redressed in only one suit, brought in the names of the parent and the child."

The second section declares that:

"Separate verdicts shall be rendered, one verdict determining the right of the child, and the other verdict determining the right of the parent, and separate judgments shall be rendered thereon with the right to separate executions."

The command of this section was not fully obeyed in the court below; for, although the jury found separately in favor of the minor and of his mother, only one judgment was entered, and this was for the sum of the two verdicts. Considering the plain language of the statute, this judgment cannot be sustained. But as a reversal merely for this reason would only result in the entering of two judgments, and as such entry would probably be followed by a new writ, or writs, of error, we shall treat the record as if the proper entries had been made, and both judgments were now before us.

The gravamen of the action is the company's negligence, and this was provisionally established by the verdicts. But, as a motion was duly made under the Pennsylvania act of April 22, 1905 (P. L. 286), for judgment in favor of the company upon the whole record notwithstanding the verdicts, the court's refusal of the motion requires us to consider whether there was any evidence of the company's negligence that ought to have been submitted to the jury. So far as the contributory negligence of the minor is concerned, it seems to be conceded that he is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

not to be charged therewith. No argument was presented upon that point, and we therefore pass it without further comment. And we think that not much more need be said concerning the question upon which stress was laid, namely, whether the jury should have been allowed to pass upon the averment that the company had been negligent. A review of the testimony has satisfied us that this averment was supported by evidence that required its submission, and that the court's instructions upon this subject were correct. The minor was ordered to do certain work upon an elevated platform, which was supported at one of its four corners by a rope that was made of wire and some variety of cord. It had been in place for about a year, and its situation was such that, in addition to the strain that was put upon it by use, it might also be somewhat weakened by chafing, although the chafing was probably not severe. Moreover, it was exposed to escaping steam, and there was evidence that rope such as this, if subjected to damp, might not be safe for more than a year. It was not proved that the rope had been inspected since it was first put up, although there was testimony that it had been tested after the accident and had then showed a satisfactory degree of strength. But the rope did break, and the minor was thrown to the ground; and, under the evidence just referred to, we think it was for the jury to say whether the company had fulfilled its obligation to exercise due care in furnishing and maintaining a reasonably safe place for the work of its servants. Upon this branch of the case the trial judge would not have been justified in giving a binding instruction in favor of the company.

The difficulty arises upon the charge concerning the measure of damages. No points upon this subject were presented by either party, and therefore the court was only bound to give such instructions as would furnish adequate and correct guidance to the jury. So far as relates to the instructions about the damages that might be awarded to the minor, there is no assignment of error to their accuracy or sufficiency that need be noticed, and for this reason, if for no other, they need not be considered. But exceptions were duly taken, and error is assigned, to the rulings that sustained the mother's right to recover, and the question thus raised must receive attention. Her right rests wholly upon the Pennsylvania act of June 26, 1895 (P. L. 316). If the common law, as it is understood in this state, were to determine the question, it would undoubtedly deny the right. This proposition is settled by Railway Co. v. Stutler, 54 Pa. 375, 378 (93 Am. Dec. 714), where a mother sued to recover damages for injury to her minor son, not resulting in death, but was refused relief; the court saying:

"The son, a young man 18 years of age, lived with his mother, and occasionally earned money for her by small jobs of labor, and she nursed him after he was hurt, and furnished medical attendance. The evidence was sufficient, had the action been by a father, to establish the relation of master and servant, and it is in right of such a relation, rather than in her character of parent, that the mother claims damages in this action. There was no evidence of an express contract between the mother and son by which she was entitled to his services, and at law she has no implied right to them.

"A father is bound by law to support and educate his children, and is entitled to the correlative right of service; but a mother, not being bound to the duty of maintenance, is not entitled to the correlative right of service, and

the relation of mistress and servant can be constituted between them only as it may be constituted between strangers in blood, save that less evidence would perhaps be sufficient to establish it.   South v. Denniston, 2 Watts [Pa.] 477; Leech v. Agnew, 7 Barr [7 Pa.] 21."

The court added, in answer to the argument that her right to recover might be based on her obligation under the poor laws to support her son in case he should need help:

"By the act of June 16, 1836, the mother of every poor person not able to work, if she be of sufficient ability, may be charged to relieve such poor person at a rate to be prescribed by the court of quarter sessions, under pain of forfeiting a sum not exceeding $20 a month; but her right to such an action as the present cannot be rested upon this contingent liability.  It is true that the injury her son received increases the probability of his becoming chargeable upon her under the statute; but no liability has yet attached, and no statutory proceeding has yet been instituted.  If the action was grounded upon such a statutory liability, it would be set forth in the declaration, and the damages would be limited to the statutory measure."

And the opinion concludes:

"Thus, then, this case stands: An action by a mother who has no common-law right to the services of her son and no special contract which constitutes her his mistress.  But, if she really stood in that relation to him, her action is founded upon breach of a contract to which she was a stranger and which was not made in her service, as that in Alton's Case (Jurist of August, 1865, p. 672) was made in the course of the master's business.  It belongs not to the category of actions for seduction, and no precedent has been shown to justify it, whilst the English judges declare that in that country, so fertile in precedents, not one exists for such an action.  When to these considerations we superadd the legislation which, both in England and in this country, has been necessary to give mothers a right of action for negligence that causes the death of a child, it seems very obviously our duty to declare that the action ought not to have been sustained, and that the judgment must be reversed."

If, however, the injury had resulted in death, it was held by the same court at the same term (Railroad Co. v. Bantom, 54 Pa. 495, 497) that the mother would have had a right of action—not at common law, however, but solely by the force of the Pennsylvania act of 1855 (P. L. 309), as the court explained:

"Thus far the Legislature have compelled us to go.  We keep step with them, and limit the mother's right to a case of death, and not of maiming, because they have changed the rule of the common law no further than this. Where the injury does not result in death, we decided at the present term, in Railway Co. v. Stutler, ante, page 375 [93 Am. Dec. 714], that the mother has no right of action for loss of a son's services; but where it does result in death we sustain the action by virtue of the act of Assembly.  For the discrepancy of these rules we are not responsible."

These cases were cited to the court in Kelly v. Traction Co., 204 Pa. 624, 626, 54 Atl. 482, 483, and were recognized as authority for the proposition that where a minor is injured, and both parents are living, the father alone can sue.  Upon this point the court said:

"When the boy was hurt, his father, Patrick Kelly, was living.  The suit was originally brought by the father in his own right and as the next friend of his son.  The cause of the father's action was the alleged negligence of the traction company, resulting in injuries to the minor son, in consequence of which his services would be lost to the father during his minority.  The cause

of action arose May 6, 1897. At that time there was nothing for which the mother could have sued, and the appellant was guilty of nothing subsequently which gave her a cause of action against it. The boy was not killed, but simply injured, and in such a case the cause of action is in the father alone, as we have held, for reasons which need not be repeated here, in Fairmount & Arch Street Passenger Railway Co. v. Stutler, 54 Pa. 375 [93 Am. Dec. 714], and in Pennsylvania Railroad Co. v. Bantom, 54 Pa. 495. This cause of action was not split by the death of the father, and until the Legislature gives the mother the right to sue in a case of injury to a minor child, caused by the negligence of another and not resulting in death, we cannot give it to her."

But, as this case arose after the act of 1895 had been passed, the statute was presented to the court as the basis of the mother's right to recover. To this argument the court replied:

"The act of June 26, 1895 (P. L. 316) gave Mrs. Kelly no right to sue. It simply gives a wife, under certain circumstances, equal power, control, and authority with the father over a minor child, and an equal right to its custody and services. It does not appear from the testimony that the family circumstances were such at the time of the injury as gave Mrs. Kelly, under the act of 1895, this equal right with her husband in the power, control, and authority over her child and to his custody and services."

Whatever may have been meant by the court in the use of this language, the case has been distinguished in O'Brien v. Philadelphia, 215 Pa. 407, 64 Atl. 551, and, as that decision is relied upon to support the mother's right, it must be carefully examined. It is clear that the two cases in 54 Pa. were still recognized as stating the common law correctly, for Chief Justice Mitchell begins his opinion by saying:

"The right of action of a father for injury to a child was based on his duty of support and his consequent right to the services of the child. The common law, which paid no heed to merely sentimental considerations or matters of feeling, put the action on the basis of master and servant. Even the most serious of all, the seduction of a daughter, was redressed as an injury to the father as master, per quod servitium amisit. The mother, being under no obligation to support, had no corresponding right to service. This was the state of the law when the act of June 26, 1895 (P. L. 316), was passed."

Turning, then, to the statute in order to inquire how far it has extended the mother's right, it is to be observed that the act relates, as the title declares, "to husband and wife who are the parents of minor children, enlarging and extending the power, control and authority of the mother over their minor children, under certain circumstances." Under the state Constitution the title forms part of an act, and it is therefore often looked to for aid in construing the enacting clauses. From the title, as well as from the body of the act, it is clear that the mother's power, control, and authority over her minor children were not made fully, or at all times, equal to the father's. They were merely enlarged and extended, and this, not in all cases, but only "under certain circumstances." The primary purpose of the statute, as the Chief Justice goes on to say, was "to enlarge the rights of the mother in cases of dispute between the parents of a minor child. This is apparent from the second section, which subjects all such disputes to the discretionary authority of the courts." The section is as follows:

"That in all cases of dispute between the father and mother of such minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which par-

ent, if either, the custody of such minor child shall be committed, and shall remand such child accordingly; regard first being had to the fitness of such parent and the best interest and permanent welfare of said child."

But, while this section gives no such right as is now sought to be exercised, the first section goes somewhat further and does give the mother a right to sue under certain circumstances. This section declares:

"That hereafter a married woman, who is the mother of a minor child and who contributes by the fruits of her own labor or otherwise toward the support, maintenance and education of her said minor child shall have the same and equal power, control and authority over her said child and shall have the same and equal right to its custody and services as is now by law possessed by her husband, who is the father of said minor child; provided, however, that the mother of said minor child is otherwise qualified as a fit and proper person to have the control and custody of said child."

Concerning this section, Chief Justice Mitchell declares:

"But unless we totally disregard the clear meaning in the language used, we must give the act a wider application. The mother who without compulsion voluntarily does what the father is under legal obligation to do, i. e., supports the child, 'shall have the same and equal right to its custody and services, as is now by law possessed by' the father. In the present case, if the father were now supporting the child, his right of action could not be questioned. As he is not doing so, but the mother is, her right to the services is by the statute the same as his would be, and her right to sue for their loss must necessarily be the same. What would be the result if both parents had been supporting the child, and were now disputing the right to sue for loss of services, we need not now consider."

He then proceeds to distinguish Kelly v. Traction Co., and shows that in that case the father and mother were both alive when the son was injured, and apparently were living in the family relation; that the father had therefore a paramount right to recover the damages; and that there was no evidence to show that the mother had ever acquired a right of action under the act of 1895, which she could assert —as she was allowed by the trial court to assert it—by taking her husband's place on the record after his death and recovering as the minor's mother in her own right after the husband's death. Moreover, it is plain enough that O'Brien's Case differed from the case of Kelly in another important respect, for Mrs. O'Brien's husband had deserted her 10 years before the injury to her daughter, and she was supporting the child by her own exertion. She was, therefore, at all points within the first section of the act. She was a married woman, the mother of a minor child, and was supporting the child by the fruits of her own labor. But, even so, if her husband had been helping to support the child, there would have been a question, as the court recognized, whether he or she would have had the right to sue for the loss of service. As he had deserted her, however, and was not asserting any claim to the damages, her right to recover was affirmed.

When this writ of error was first argued we were inclined to believe that O'Brien's Case might perhaps justify the inference that the scope of the act was wide enough to include a widow (as well as a wife) who was the mother of a minor child. If a wife whose husband had deserted her might sue, the argument was not without force that a

wife whose husband had died should have a similar right. But the re-argument and further reflection have satisfied us that we should not indulge the supposition that the Pennsylvania Supreme Court intended the act to have so broad an interpretation. The rule is well known that a federal court, in construing the legislation of a state, is bound to accept the construction announced by the state's highest tribunal. If no such construction has been announced, the federal court must interpret the law for itself, although it may be obliged afterwards to surrender its position in favor of a subsequent and conflicting interpretation by the Supreme Court of the state. It is this situation that confronts us now. The Pennsylvania court, evidently with some reluctance, has felt constrained to decide that the first section of the act of 1895 gave the wife and mother a right to sue in a case where she was supporting the minor at the time of the injury, although the husband and father was still living—it appearing, also, that the husband had deserted his wife, was not supporting the child, and was making no claim to the right of action for loss of the child's services. To hold that this decision should be extended to the case of a mother whose husband has long been dead, who has married again, and was not maintaining the minor at the time of the injury—as was the case here—is not a necessary inference from the opinion of the Pennsylvania court, and does not seem to be warranted by the language of the statute. The title does not embrace every parent of a minor child, but is confined to "husband and wife who are the parents of minor children"—apparently contemplating that the marriage must still exist, and that both parents must be living. (What the effect of a divorce may be, need not now be determined.) Under the Pennsylvania Constitution, which requires that the subject of every bill must be clearly expressed in the title, it is always permissible to examine the title for aid in construing the body of a statute. In the present instance there seems to be complete harmony between these two parts of the law. The title speaks of "husband and wife who are the parents of minor children," and it seems clear that these persons reappear in the first section as "a married woman" and "her husband." This section is evidently dealing with a situation where "a married woman who is the mother of a minor child," and by labor or otherwise contributes to its support, maintenance, and education, may come into conflict with the legal right to the custody and services of the child possessed before the passage of the act by "her husband who is the father of such minor child." Obviously such a conflict can only arise if both parents are living; and this view is strengthened by the statement that her right shall be "the same and equal right" as the husband and father possesses—this phrase contemplating two rights existing at the same time —and is further strengthened by a proviso, which immediately follows and denies her the right altogether unless in the conflict between the two rights she is found to be a fit and proper person to have the control and custody of the child. The same thought appears beyond dispute in the second section, for this is expressly confined to cases of dispute between "the father and mother of such minor child as to which parent shall be entitled to its custody or services," and can only bear the meaning that both parents must be living.

The principal purpose of the act—and it may well be that this was the only purpose in the mind of the Legislature—is to put the mother under certain circumstances on an equality with the father, when both parents are claiming, or at all events, are able to claim, the power, control, and authority over the child; and although the probably undesigned breadth of the language used has compelled the Supreme Court of Pennsylvania to permit a mother sometimes to sue for injuries to a minor, this permission is not yet unlimited and unqualified. Until the state court shall hold otherwise, we must follow our own judgment and confine the statute to cases where both parents are living.

The conclusion at which we arrived upon the original argument has not been altered, and the judgment then entered will stand, namely:

It is therefore ordered that the judgment be reversed, with instructions to the Circuit Court to enter judgment on the verdict that was rendered in favor of the minor, and to enter judgment for the company, notwithstanding the verdict, upon the finding in favor of the minor's mother. It is also ordered that the plaintiff in error pay the costs in this court.