453 A.2d 342

**Catherine PETRI, as Mother and Natural Guardian of the Minor, Kenneth Petri, Jr., and Catherine Petri, in her own right, Appellants,**

v.

**Dr. William SMITH and Winthrop Laboratories, Incorporated.**

Superior Court of Pennsylvania.

Argued Feb. 3, 1982.

Filed Oct. 22, 1982.

Reargument Denied Dec. 30, 1982.

Petition for Allowance of Appeal Denied May 16, 1983.

262

Avram G. Adler, Philadelphia, for appellants.

Charles B. Burr, Philadelphia, for Smith, appellee.

Thomas J. Finarelli, Philadelphia, for Winthrop, appellee.

Before WICKERSHAM, ROWLEY and MONTEMURO, JJ.

ROWLEY, Judge:

This is an appeal from an order granting summary judgment in favor of the appellees in a medical malpractice action. Suit was filed in 1979 by Catherine Petri (appellant), in her own right and as the parent and natural guardian of Kenneth Petri, Jr., (Kenneth). Appellant asserted claims for damages against Dr. William Smith and Winthrop Laboratories, Inc.,[1] (appellees) as a result of their alleged negligence in connection with Kenneth's birth in 1965. At the close of the pleadings in the case, Dr. Smith and Winthrop Laboratories, Inc., filed separate motions for summary judgment on the ground that the appellant's suit was barred by the two year statute of limitations.[2] In response, appellant raised the applicability of the "discovery rule"[3] averring that it was not reasonably possible for her to have discovered the wrong done Kenneth until, 1977, and, thus, the applicable two year statute of limitations did not begin to run until then. Additionally, appellant made a constitutional claim averring that Pennsylvania's statute of limitations in personal injury cases, which holds minors

1. The original record contains a stipulation to the effect that "Winthrop Laboratories, Incorporated" was an incorrect designation, and that the accurate corporate name of the appellee is "Winthrop Laboratories, Division of Sterling Drug, Incorporated". However, because the papers submitted to this Court carry only the designation "Winthrop Laboratories, Incorporated", we use that designation in this opinion.

2. Act of June 24, 1895, P.L. 236, § 2, 12 P.S. § 34 (repealed) replaced by 42 Pa.C.S.A. § 5524(2).

3. The "discovery rule" provides that in personal injury cases the statute of limitations runs from the time of actual discovery of the injury or from the time when discovery of the injury was reasonably possible. *See, Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959).

accountable equally with adults, was violative of the minor's equal protection and due process rights. After considering appellant's "discovery rule" argument, as well as her constitutional claim, the trial court rejected both of them and entered summary judgment in favor of the appellees. This appeal of that decision followed. We reverse.

## Facts

Kenneth Petri, Jr. is the first-born child of Catherine and Kenneth Petri. He is currently seventeen years old, and has been mentally and physically retarded since birth. Presently, he remains unable to walk or talk, and suffers from abnormal reflexes, muscle tone and posture.

Kenneth was born, after a markedly difficult pregnancy, at Abington Memorial Hospital, Abington, Pennsylvania, on September 15, 1965, at 4:19 p.m. by way of a "frank breech presentation." [4] Dr. William Smith, one of the appellees, was his delivering obstetrician. During the course of her labor with Kenneth, appellant received two doses of a synthetic narcotic analgesic called demerol,[5] a drug manufactured by the second appellee, Winthrop Laboratories, Inc. The liability of Dr. Smith in the instant case is premised on his negligence in delivering Kenneth.[6] The liability of Win-

---

**4.** The term "frank breech" refers to the presentation of the buttocks of the fetus in labor, with the legs extended against the trunk and the feet lying against the face. *See,* Dorland's Illustrated Medical Dictionary (25th ed. 1974) under "Presentation".

**5.** During his deposition testimony, Dr. Smith denied any knowledge of the second administration of demerol. It was his contention that the notation found in the hospital record indicating that the appellant received a second dosage of the drug is not in his handwriting and was not ordered by him, either orally or in any subsequent written order. Whether Dr. Smith was responsible for this second medication is an issue to be resolved at trial. We comment on it here only for the purpose of noting that such an issue does not involve a material fact so as to deny a motion for summary judgment.

**6.** More specifically, appellant contends that Kenneth's condition resulted from a combination of: (1) a failure on the part of Dr. Smith to perform a cesarean section when it was clear Kenneth's birth would be a breech presentation; (2) the use of forceps by Dr. Smith to

throp Laboratories, Inc. is premised on its negligence in failing to adequately warn Dr. Smith of the dangers inherent in the use of demerol.

Within twenty-four (24) hours of Kenneth's birth, appellant knew that all was not well with her newborn son. She was informed at some point during that period by Dr. John J. Shields, Kenneth's pediatrician, that some "damage" could have been done to Kenneth. Specifically, at her deposition, she recalled Dr. Shields telling her at the hospital:

> ... that there could have been some damage done. The severity of it, the exact severity of it, they really didn't know, they would take time to see it.

Later in her deposition, in response to another question concerning her conversations with Dr. Shields in the hospital, she replied in the following fashion:

> He had just stated to me that time would tell and show. It was all up to time to see what would happen and he said these things happen...

During the years following Kenneth's birth, Catherine Petri and her husband had three more children. She gave birth in 1967, 1970 and 1972 to three normal, healthy sons. Dr. Smith was not the attending obstetrician at any of those deliveries, although appellant did see him five times on a professional basis for post-natal care after Kenneth's birth. In her deposition testimony, appellant stated that any concerns she may have had with respect to the hereditary aspect of Kenneth's condition were assuaged by Dr. Shields' assurances, and those of his associate, Dr. Ickler, that the minor appellant's condition was "a one time thing, probably, never happen again." When asked at her deposition whether she had ever sought, prior to the institution of the law suit, any other medical opinions as to the cause of Kenneth's retardation, she replied:

> No, just what the pediatrician said, they said things like this does [sic] happen, some children are born with heart defects, limbs missing and we just took it as it was.

accomplish Kenneth's delivery; and (3) an improper administration of the drug demerol during labor.

When asked whether she had ever questioned Dr. Smith concerning her oldest son's condition, she replied in the negative, stating:

> No, I never asked him. I always thought that this is what happened, it was like an act of God and that was it. I never questioned him about it.

It was not until after a family reunion on Labor Day in 1977 that Catherine Petri first suspected that her son's defects may have been the result of negligence. At that Labor Day reunion, appellant learned of litigation in another jurisdiction where the child involved suffered from a condition similar to that of her son's. The information she received caused her to seek out legal counsel. With counsel's help she obtained the hospital record, and eventually filed this suit some fourteen (14) years after Kenneth's birth.

In response to the appellees' contention that her suit was well beyond the applicable statute of limitations, appellant made two arguments to the trial court. Appellant's first argument was that she was hindered from discovering the injury done her son by the impression which had formed in her mind that some act of God had occurred to cause her son's defective condition. Furthermore, she contended that she was reasonable in forming such an impression, and in failing to investigate in more detail the possible causes of her son's defects, in light of the conversations she had had with Drs. Shields and Ickler, and the difficult first-time pregnancy she had sustained. Consequently, she averred that her failure to bring timely suit was excused under the "discovery rule" exception to the statute of limitations' bar, in that the injury done her son was not reasonably discoverable until 1977.

The trial court did not agree with the appellant's reasoning with respect to her first argument. It held, as a matter of law, that appellant had not acted with reasonable diligence to protect her own and Kenneth's interests, concluding that the "discovery rule" exception did not apply to the circumstances of her case and that she "had ample opportunity to seek and obtain competent legal and medical advice

within the limitation period." Her failure to seek that advice or to make any further investigation into Kenneth's condition was, according to the trial court, unreasonable as a matter of law.

Appellant's second argument concerned the constitutionality of the statute of limitations as applied in this case to bar Kenneth's suit for damages sustained during his minority. It was her contention that it was a violation of Kenneth's equal protection and due process rights to hold him bound equally with adults to prescribed statutory periods within which legal causes of action may be brought.

The trial court, likewise, did not agree with the appellant's reasoning with respect to her second argument, finding no support for such a claim in the case law, and subsequently entered summary judgment in favor of the appellees.

On appeal, appellant assigned two grounds of error on the part of the trial court in granting summary judgment to the appellees:

I.   The trial court erred "in deciding as a matter of law that educated parents have a higher duty than the reasonable man standard to disregard medical advice that the brain impaired child was an 'Act of God' so as to pursue legal action."

II.  The trial court erred "in refusing to declare judicial interpretation of the Pennsylvania Statute of Limitation for personal injury unconstitutional at least until the child reached majority".

## I.

Preliminary, we note that under Pa.R.C.P. 1035, summary judgment may only be entered where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Acker v. Palena,* 260 Pa.Super. 214, 393 A.2d 1230 (1978), "In addition, we are mindful that in considering a motion for summary

judgment the court must examine the record in the light most favorable to the non-moving party; that the court's function is not to decide issues of fact but merely to determine whether any such issues exist; and that all doubts as to the existence of a genuine issue of material fact must be resolved in favor of the non-moving party [citations omitted]". *Taylor v. Tukanowicz,* 290 Pa.Super. 581, 586, 435 A.2d 181, 183 (1981).

The first ground of error proposed by the appellant asks us to consider the applicability of the "discovery rule" to the appellant's case, and the alleged erroneous holding of the trial court wherein it was supposedly concluded that educated individuals are held to a higher standard than that of reasonableness when considering the applicability of the "discovery rule" exception to the statute of limitations' bar. After carefully reviewing the record presented in the instant case and studying the language of the trial court's opinion, we find no basis for appellant's contention that the trial court's holding dictated that educated individuals have a higher duty than that of the ordinary man. The education of the appellant was merely one factor the trial court considered in determining whether under the circumstances, appellant acted reasonably or unreasonably within the meaning of the "discovery rule". Nevertheless, although we understand the rationale employed by the trial court, we do not agree with its conclusion that appellant's failure to obtain knowledge of Kenneth's injury was clearly unreasonable *as a matter of law.*

■ It is well established that an individual asserting a cause of action is required to use due diligence to properly inform himself or herself of the facts and circumstances upon which the claimed right of recovery is based and to institute suit within the period of the applicable statute of limitations. *Schaffer v. Larzelere,* 410 Pa. 402, 189 A.2d 267 (1963). Once the prescribed statutory period has expired, the individual is barred from bringing suit, unless some exception which tolls the statute of limitations can be prov-

en. One such exception is the "discovery rule" exception.[7] The "discovery rule" exception is premised on the concept that where the existence of an injury is not apparent or where the existence of an injury cannot be reasonably ascertained, the statute of limitations does not begin to run until such time as the injury's existence is known or discovered, or becomes knowable or discoverable by the exercise of reasonable diligence. *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959).

This question of the reasonableness of an individual's conduct in attaining the appropriate level of knowledge, which must be had before the statute of limitation will start to run in a personal injury case, has been a source of much litigation since the "discovery rule" was enunciated in *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). Recently, this Court in *Stein v. The Washington Hospital,* 302 Pa.Super. 124, 448 A.2d 558 (1982), filed July 16, 1982, addressed this question and stated:

> The test by which the time at which a discovery is made is determined by the following standard which we recently discussed in *Anthony v. Koppers Co., Inc.,* 284 Pa.Super. 81, 96–97, 425 A.2d 428, 436 (1981), reversed on other grounds 496 Pa. 119, 436 A.2d 181 (1981).
>
>> There has been some dispute or confusion, as to the exact level of knowledge a plaintiff must have before the statute of limitations will start to run. Judge Harry TAKIFF of the Court of Common Pleas of Phila-

---

**7.** The appellant does not attempt to claim the benefit of the "estoppel theory" exception to the statute of limitations' bar. The "estoppel theory" exception is premised on the concept that when an injured party is lulled into a sense of false security or misled by the party discovered to be culpable, which results in a delay in bringing suit beyond the statutory period, then the culpable party will be estopped from advocating a statute of limitations' bar. *Walters v. Ditzler,* 424 Pa. 445, 227 A.2d 833 (1967). It is axiomatic that before such exception can be applied, it must be demonstrated that the concealing screen was erected by appellant's adversaries. *Nesbitt v. Erie Coach Company,* 416 Pa. 89, 204 A.2d 473 (1964). This is not the case here. If any concealment has been shown, it was effectuated by Dr. Shields, and not by appellees.

delphia has recently set forth an excellent statement of the rule, as follows:

> Ayers' progeny have struggled primarily with the question of reasonableness of plaintiff's conduct in attaining the appropriate level of cognitive knowledge which ultimately prompts a timely lawsuit. With the question of "reasonableness" as a constant qualification running through the decisional law, the principle emerges that three independent phases of knowledge must be known or knowable to plaintiff before the limitation period commences: (1) knowledge of the injury; (2) knowledge of the operative cause of the injury; and (3) knowledge of the causative relationship between the injury and the operative conduct. (302 Pa.Superior Ct. 124, 448 A.2d 558)

Taking the three independent phases of knowledge noted above, and applying them to this case, it becomes clear that the first phase, i.e., knowledge of the injury, was known to the appellant shortly after delivery. Catherine Petri knew within twenty-four (24) hours of Kenneth's birth that some damage had been done to her newborn son. Although she was not immediately aware of the nature or the extent of the damage, it was obvious within the first two years that Kenneth was both physically and mentally retarded. It is also clear from the record that Catherine Petri knew, or should have known prior to 1977, about the appellees' actions which she now alleges were the "operative causes" of Kenneth's condition. In her complaint, she alleges that the "operative causes" were the failure to perform a cesarean section, the improper administration of drugs, and the failure of the drug company to give adequate warnings about the dangers inherent in the improper use of demerol. The record shows that Catherine knew that Kenneth was a breech baby and that his delivery had required that extra measures be employed, such as the use of forceps. She also was aware that a cesarean section had not been performed. Additionally, although she did not know the name of the drug which had been administered to her during her labor,

she knew that she had requested that she be medicated during labor on one of her early office visits with Dr. Smith, and she indicated in her deposition that she recalled receiving medication at various times during the labor period. Consequently, the second phase of knowledge, i.e., knowledge of the operative cause or causes of the injury, was also known or knowable to the appellant shortly after Kenneth's birth.

What is *not* clear from the record, however, is whether the third phase of knowledge, i.e., knowledge of the causative relationship between the injury and the operative conduct, was knowable to the appellant prior to 1977. It is the appellant's contention that she did not know and had no reason to know the causal relationship between the injury to Kenneth and the occurrences during labor. This contention is not contradicted in the record and appellees do not argue that appellant was actually aware of the causal relationship she now alleges exists between Kenneth's condition and their conduct until after September of 1977. However, the question remains whether this third phase of knowledge, although not *known,* was *knowable* to the appellant by the exercise of reasonable diligence prior to 1977. The trial court concluded that it was and dismissed her belief that Kenneth's condition was "an act of God" as being unreasonable as a matter of law.

The standard of conduct to which appellant was required to conform for the protection of her own and Kenneth's interests was one of "reasonable diligence". What is or is not "reasonable" under the circumstances in this case requires an evaluation of appellant's actions to determine whether she exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others". *Restatement, Torts 2d,* § 283, comment: b. The standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective standard. It is a community standard. It is sufficiently flexible, however, to take into account differences between persons, their capacity to

meet certain situations and the circumstances confronting them at the time in question. In short, the standard of conduct required is a uniform one which takes "into account the fallibility of human beings." *Restatement, Torts 2d,* § 283, comment: b. and c. Our law recognizes that, usually, what that standard is may be best determined by the collective judgment, wisdom, and experience of jurors who have been selected at random from the community whose standard is to be applied.

There is no dispute in this case concerning what appellant did or failed to do following Kenneth's birth and the discovery that "some damage had been done." What *is* in dispute, however, is the appropriate standard of conduct required of appellant for the protection of her own and Kenneth's interests. We cannot say that as a matter of law the appropriate standard of reasonable diligence required more of appellant in this case, nor can we say that it is *clear* that reasonable men could not differ as to what the appropriate standard required of her. A jury could conceivably conclude that her failure to investigate the possible causes of Kenneth's condition until 1977 was reasonable, given her religious beliefs, her difficult pregnancy and her prior conversations with Kenneth's pediatricians. The circumstances of appellant's situation at the time of Kenneth's birth do not unquestionably indicate that she was unreasonable as a matter of law in taking the course of action that she did.

■ We are aware of those recent medical malpractice personal injury cases where summary judgment was granted on the ground that, as a matter of law, the plaintiff acted unreasonably in failing to bring suit within the statutory period of limitation but we believe they are distinguishable from this case. *Wallace v. Horvath,* 283 Pa.Super. 179, 423 A.2d 1047 (1980) (plaintiff's attempt to excuse untimely suit on a claim of non-discoverability of injury was unsupported where a timely suit had been filed in federal court only to be dismissed for want of jurisdiction); *Keating v. Zemel,* 281 Pa.Super. 129, 421 A.2d 1181 (1980) (plaintiff had necessary cognitive knowledge of the injury and the opportunity to learn identity of culpable party prior to running of statute

of limitations); *Bosworth v. Plummer,* 510 F.Supp. 1027 (1981) (plaintiff, a medical supply sales representative, had sufficient knowledge of the circumstances surrounding daughter's injury to initiate investigation into legal responsibility for injury prior to expiration of statutory period). Our review of the record convinces us that the case at hand is governed by those medical malpractice personal injury cases where the reasonableness of plaintiff's actions in failing to discover the injury prior to the running of the period of limitation was found to be a jury question. *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) (statute of limitations did not begin to run against plaintiff until surgical sponge left in plaintiff's stomach became physically objective and ascertainable); *Acker v. Palena,* 260 Pa.Super. 214, 393 A.2d 1230 (1978) (non-discovery of cause of eye injury reasonable in light of physician's assurance that vision would return); *Grubb v. Albert Einstein Medical Center,* 255 Pa. Super. 381, 387 A.2d 480 (1978) (late joinder of surgical instrument manufacturer not unreasonable as a matter of law in light of plaintiff's physical paralysis); *Barshady v. Schlosser,* 226 Pa.Super. 260, 313 A.2d 296 (1973) (Hoffman, J. Opinion in Support of Reversal) (non-discovery of injury reasonable where physician concealed the injury from plaintiff); *Greenberg v. McCabe,* 453 F.Supp. 765 (1978) (proper for jury to consider whether nature of defendant's conduct reasonably caused plaintiff's non-discovery of his psychiatric malpractice). Therefore, we hold that the trial court erred in concluding that appellant acted unreasonably *as a matter of law* and in entering judgment for appellees.

## II.

■ The second ground of error proposed by the appellant asks us to consider the constitutionality of Pennsylvania's statute of limitations in personal injury cases where minors are concerned. The thrust of appellant's argument is that the statute of limitations, which holds minors accountable equally with adults, violates a minor's equal protection and due process rights. Appellant avers that although her right to file this action is properly a jury question, Kenneth's right

is not. She contends that, because Kenneth is less than eighteen years of age, under no circumstances should he be barred from bringing suit.

The merits of appellant's constitutional arguments on this issue were recently discussed at length in *DeSantis v. Yaw,* 290 Pa.Super. 535, 434 A.2d 1273 (1981). Two members of this panel participated in that comprehensive and scholarly opinion, and their view seriously questioning the rationale of barring personal injury suits by minors on a statute of limitations basis is well expressed therein. As the *DeSantis* majority observed, however, the "settled rule" in Pennsylvania is that it is not violative of any constitutional rights to hold minors bound equally with adults to the prescribed statutory periods within which legal causes of action may be brought. This settled rule was most recently upheld by this Court in *Stein v. The Washington Hospital,* 302 Pa.Super. 124, 448 A.2d 558 (1982), wherein the Court *en banc* observed "we are ... obliged to hold that a child's cause of action is barred by the statute of limitations when it is not timely filed ..." 302 Pa.Superior Ct. 143, 144 n. 7, 448 A.2d 558, 568 n. 7. The appellant's argument in this respect, therefore, is without merit.

Summary judgment is vacated and case remanded for further proceedings. Jurisdiction is relinquished.