**Cheryl HARGETT, individually and as Guardian ad Litem for Nathaniel Hargett, a Minor, Plaintiffs,**

**v.**

**David LIMBERG, M.D., an individual, and Intermountain Health Care, Inc., dba Fillmore Hospital and Fillmore Hospital, Defendants.**

Civ. No. C–83–0162W.

United States District Court, D. Utah, C.D.

Nov. 13, 1984.

Fred R. Silvester, Salt Lake City, Utah, for plaintiffs.

B. Lloyd Poelman, David B. Erickson, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on defendants' motion for summary judgment. The court heard oral argument on the motion on June 28, 1984, after which the court requested that plaintiffs notify the Attorney General of the State of Utah of their constitutional challenge to the Utah Health Care Malpractice Act's statute of limitations. Plaintiffs have since made the proper notification, and all parties have submitted additional memoranda pertaining to the constitutional issues. The court again heard oral argument on November 5, 1984,

Fred R. Silvester appearing for plaintiffs and David B. Erickson appearing for defendants. Being now fully advised, the court renders the following decision and order.

This case is a diversity action for medical malpractice arising from injuries suffered by Nathaniel Hargett, a minor child of plaintiff Cheryl Hargett. Nathaniel contracted meningitis in February, 1979. He has been diagnosed as presently having several physical, neurological and mental impairments directly or indirectly attributable to the meningitis. Plaintiffs claim that the severity of Nathaniel's impairments was caused by the negligence of defendant Dr. David Limberg, M.D., in failing to promptly diagnose and treat the meningitis. Defendants have moved for summary judgment contending that this action is barred by the applicable statute of limitations.

### I.

The material facts construed most favorably to plaintiffs can be briefly summarized. Nathaniel Hargett, then a 3½-month-old baby, began having health problems related to this action about February 5, 1979. On February 12, 1979 his mother, Cheryl Hargett, telephoned Dr. David Limberg, to report that Nathaniel had a fever, diarrhea and other symptoms. Dr. Limberg felt that Nathaniel had a viral infection. As the week progressed, Nathaniel's condition worsened. Ms. Hargett took Nathaniel to the hospital and to Dr. Limberg's clinic a number of times during the week and Dr. Limberg examined Nathaniel three or four times. Dr. Limberg's opinion was that Nathaniel had a viral infection that would have to run its course.

By Friday, February 16, 1979, Nathaniel's condition had deteriorated considerably. Dr. Limberg examined Nathaniel early that day and sent him home with the same diagnosis. Ms. Hargett telephoned Dr. Limberg one or two more times that Friday, and on Friday night Dr. Limberg

again told Ms. Hargett that Nathaniel had a viral infection.

Ms. Hargett took Nathaniel to the hospital on Saturday morning where Dr. Limberg saw him. Dr. Limberg was short-tempered and sent Ms. Hargett and Nathaniel home. Saturday or Sunday evening, Ms. Hargett, believing her baby was dying, took Nathaniel to the hospital. Dr. Limberg arrived shortly, examined Nathaniel and took a blood count and spinal tap. The spinal fluid was cloudy indicating meningitis. Nathaniel was then immediately transferred to the care of Dr. Phillip Freestone at Utah Valley Hospital. Nathaniel was comatose for his first seven days at Utah Valley Hospital. After three weeks he was released for a few days, but was readmitted and remained hospitalized for three to three and one-half months.

Ms. Hargett stated in her deposition that she realized that the severity of the meningitis may have been exacerbated by Dr. Limberg's failure to diagnose the illness earlier and that Dr. Limberg may have been negligent:

Q. Have you ever had a conversation with Dr. Limberg in which you told him that you felt that the injuries that—and the damages that Nathaniel presently experiences, were in part or completely his fault?

A. No. I never accused him of anything.

Q. Have you ever had any conversations with any hospital personnel in which you've made that kind of statement?

A. Yes.

Q. Who have you talked with from the hospital?

A. Upon Nathaniel arriving at Utah Valley Hospital, I had asked Dr. Freestone—I told him I felt that Dr. Limberg had been negligent. He waited too long to diagnose Nathaniel to the point of him becoming more severe, and I asked him what the chances were of proving this. And he said with a general practitioner it would be hard to prove.

Cheryl Hargett-McMahon Depo. at 70 (Feb. 22, 1984). Later in the same deposition Ms. Hargett again stated that on February 18, 1979 she believed that Dr. Limberg may have been negligent:

Q. When you were in the ambulance going from Fillmore Hospital to Utah Valley Hospital, and you had been told that Nathaniel then had meningitis, did you at that time feel that Dr. Limberg had been negligent in not making an earlier diagnosis of it?

A. Yes. I was more concerned for Nathaniel at that point and didn't center anything else on him.

*Id.* at 86.

The Utah Health Care Malpractice Act's limitation provision states:

No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence....

Utah Code Ann. § 78–14–4(1) (Supp.1983). In *Foil v. Ballinger,* 601 P.2d 144 (Utah 1979), the Utah Supreme Court defined "discovers ... the injury" to mean discovery of a *legal* injury. That is the two-year limitation period begins to run when the plaintiff or patient "knew or should have known that he had sustained an injury and that the injury was caused by negligent action." *Id.* at 148.

Plaintiffs argue that the statements from Ms. Hargett's deposition do not indicate knowledge of *legal* injury as required by the Utah Supreme Court in *Foil.* Plaintiffs contend that Ms. Hargett did not discover the possibility of a legal injury until she consulted a lawyer in February, 1983 because she has no medical training and was led to believe by Dr. Freeman and others that Dr. Limberg's alleged negligence could not be legally proven. That argument, however, is without merit and

confuses "legal injury" with a legal conclusion of negligence.

 Under *Foil,* and its progeny, a legal determination of negligence is not necessary to start the statute of limitations. Rather, the crucial question is whether the plaintiff was aware of the *facts* that would lead a reasonable person to conclude that he may have a cause of action against the health care provider. *See, e.g., Reiser v. Lohner,* 641 P.2d 93, 99 (Utah 1982); *Hove v. McMaster,* 621 P.2d 694, 696 (Utah 1980); *Foil,* 601 P.2d at 148. Those facts include the existence of an injury, its cause and the possibility of negligence. The deposition testimony of Ms. Hargett indicates that she was aware of those facts on February 18, 1979 when she took Nathaniel to Utah Valley Hospital. Despite the extra time provided by the court,[1] plaintiffs have not submitted any affidavits or other evidence to explain or refute the plain statements made by Ms. Hargett in her deposition.

The court therefore concludes that Nathaniel's mother and guardian ad litem, Cheryl Hargett, discovered that Nathaniel had suffered a legal injury as early as February 18, 1979. Plaintiffs filed two separate complaints on February 16, 1983 and May 23, 1983, well beyond the two-year limitations period. Accordingly, plaintiffs' claims for medical malpractice are barred by the statute.

## II.

 Plaintiffs next argue that the claim of Nathaniel Hargett is not barred because Nathaniel was incapable of discovering the legal injury due to his age and mental condition. That argument must also be rejected. The statute of limitations in issue specifically provides that the two-year period commences when "the *plaintiff or patient* discovers" the legal injury. Utah Code Ann. § 78–14–4(1) (Supp.1983) (emphasis added). The plaintiff in this action is Cheryl Hargett individually and as guardian ad litem for Nathaniel.[2] Although the patient, Nathaniel, was incapable of discovering the legal injury, as discussed above, the plaintiff, Ms. Hargett, discovered the legal injury more than two years prior to bringing this action.

Plaintiffs contend that the neglect of a plaintiff-guardian ad litem in failing to commence an action should not be attributed to a minor-patient. In support of that argument, plaintiffs have cited cases from the child support area indicating that a child's vested rights to child support cannot be cut-off due to the neglect or other failure of the parents. *See Reick v. Reick,* 652 P.2d 916, 917 (Utah 1982); *Szarek v. Sandoval,* 636 P.2d 1082, 1085 (Utah 1981).

In *Szarek,* the Utah Supreme Court held that any statute limiting the time in which a paternity action must be commenced under the Utah Uniform Paternity Act is tolled by Utah's general tolling provision for all statutorily qualified plaintiffs during the child's minority. The *Szarek* court reasoned that,

> Viewed from the defendant's perspective, this long extension of the period of his (the alleged father's) vulnerability to this kind of action obviously runs counter to the policies served by the statutes of limitation, but the legislature has resolved the conflicting policies in favor of the interests of the minor child and those who support him, § 78–12–36, and we are obliged to follow their clear direction.

1. Defendants' motion was filed originally as a motion to dismiss. Because matters outside of the pleadings were presented and considered, however, the court converted defendants' motion to dismiss to a motion for summary judgment pursuant to Rule 12(b), Fed.R.Civ.P. Plaintiffs have had nearly four months to present any material made pertinent by Rule 56.

2. This action was consolidated with *Hoyt v. Limberg,* Civ. No. C–83–0697C, on January 16, 1984.

Westley Hoyt appeared as guardian ad litem for Nathaniel in that action. However, plaintiffs' counsel has represented by letter to the court and in plaintiffs' memorandum that the initial complaint was filed merely to satisfy the notice requirement of the Utah Malpractice Act. *See* Utah Code Ann. § 78–14–8 (Supp.1983). Further, Westley Hoyt moved to withdraw as guardian ad litem on September 29, 1983.

156

636 P.2d at 1085. The reference to § 78–12–36 is to Utah's general tolling provision, which provides, in part, that if "a person entitled to bring an action [with certain exceptions not applicable here] is at the time the cause of action accrued, either: (1) Under the age of majority; ... the time of such disability is not part of the time limited for the commencement of the action." Utah Code Ann. § 78–12–36 (1977). In reaching its holding, the *Szarek* court relied on *Scott v. School Board of Granite School District*, 568 P.2d 746 (Utah 1977), in which the Utah court characterized the general tolling provision as an expression of "the general legislative intent to protect the causes of minors." *Id.* at 748.

By contrast to the weighing process in the area of paternity and child support found by the Utah Supreme Court, the Utah Legislature expressly came to a different conclusion in weighing the policies favoring protection of the rights of minors with medical malpractice claims against the public's interest in containing the costs of medical malpractice insurance. In addition to the plain language that the two-year period in the Malpractice Act's limitations provision commences upon discovery by the "plaintiff or patient," the statute states, "the provisions of this section shall apply to all persons, regardless of minority or other legal disability under section 78–12–36 or any other provision of the law...." Utah Code Ann. § 78–14–4(2) (Supp.1983). The legislative history of this language indicates that it was added as an amendment in direct response to the Utah court's pronouncement in *Scott* of the general policy favoring protection of the causes of minors.[3] In view of the express language of the statute and the legislative history, plaintiffs' argument that Ms. Hargett's discovery of the legal injury does not bar Nathaniel's claim must be rejected.

---

**3.** At the floor debate prior to the third reading of H.B. 164, Representative C. DeMont Judd stated:

[W]e come to you now with the amendment which suggests that, despite what it says in 78–4, it does not impact 78–12 which is another area of the statute of limitations, and so we

### III.

Finally, plaintiffs challenge the constitutionality of the Utah Malpractice Act's provision excepting minors from the general tolling statute. Plaintiffs contend that the disparate treatment of minors who have medical malpractice claims, as opposed to minors who have other types of claims, violates the equal protection guarantees of the United States and Utah Constitutions. Further, plaintiffs argue that the limitations statute violates the due process and open courts provisions of the Utah Constitution.

### A. *Equal Protection*

It is universally accepted that a legislature may put adults and infants on the same footing with respect to statutes of limitations without affecting constitutional rights. *See, e.g., Petri v. Smith*, 307 Pa. Super. 261, 453 A.2d 342 (1982); *De Santis v. Yaw*, 290 Pa.Super. 535, 434 A.2d 1273 (1981); 51 Am.Jur.2d, *Limitations of Action* § 192 (1970). Plaintiffs do not dispute that rule. Instead they contend that the Utah legislature has improperly discriminated against one class of minors—those with medical malpractice claims as opposed to minors with other types of claims—by providing that the Malpractice Act's statute of limitations is not affected by the general tolling provision.

Plaintiffs' equal protection challenge is a variant of challenges to the Utah Malpractice Act's limitations provision rejected by this court in *Wheaton v. Jack*, Civ. No. C–82–0039, slip op. (D.Utah Aug. 9, 1982), and the Utah Supreme Court in *Allen v. Intermountain Health Care, Inc.*, 635 P.2d 30 (Utah 1981). In both of those cases, the courts applied a "rational relationship" test in analyzing the equal protection claims. In the present case, plaintiffs

are making that change in order to overturn a Supreme Court decision which has recently come down.

Transcript of Discussion and Vote in Utah House of Representatives at Third Reading of H.B. 164 (Feb. 13, 1979).

argue that the appropriate standard of review is one of "heightened scrutiny." Plaintiff relies on several recent United States Supreme Court decisions in support of that position involving classifications based on gender, *see, e.g., Heckler v. Mathews,* —— U.S. ——, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), alienage, *see, e.g., Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), and illegitimacy, *see, e.g., Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983).[4] Plaintiffs further argue that the case of *Plyer v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), in which the Supreme Court struck down a Texas law denying illegal alien children a free education provided to other children, mandates a heightened level of review. The *Plyer* Court concluded that although the right to an education was not a "fundamental interest" it was an interest of "basic importance."

■ The court concludes that heightened scrutiny is not appropriate for reviewing the classification at issue here. Unlike alienage, illegitimacy or gender, the class of minors with medical malpractice claims does not involve a fundamental interest or a classification of a suspect character. Moreover, a minor's interest in redress for medical malpractice is not an interest of "basic importance," as is the interest in an education considered in *Plyer.*

The correct standard for equal protection analysis to be applied in this case under both the United States and Utah Constitutions is the rational basis test. *See*

*Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *Brubaker v. Cavanaugh,* 741 F.2d 318 (10th Cir. 1984); *American Bank and Trust Co. v. Community Hospital,* 36 Cal.3d 359, 204 Cal.Rptr. 671, 683 P.2d 670, 677 n. 10 (1984); *Allen v. Intermountain Health Care, Inc.,* 635 P.2d 30, 31 (Utah 1981). Under that standard, the court must uphold the statute if the classification is rationally related to a legitimate legislative purpose.[5]

The express purpose for the Malpractice Act's notice and limitations provisions is "to protect and ensure the continued availability of health care services to the public." *Allen,* 635 P.2d at 32; *see* Utah Code Ann. § 78–14–2 (1977). The legislature found an increasing trend in the number of medical malpractice claims and the amount of settlements and judgments. That trend was causing malpractice insurance premiums to increase to the extent that health care providers were encouraged to practice defensive medicine. Further, the legislature found that health care services were threatened by the possible unavailability of malpractice insurance. *Id.* Consequently, the statute of limitations was enacted, "to provide a reasonable time in which actions may be commenced against health care providers while limiting that time to a specific period for which professional liability insurance premiums can be reasonably and accurately calculated ..." *Id.*

Plaintiff contends that the objective of containing a malpractice insurance crisis that may have existed in 1976 when the Malpractice Act was originally enacted was not present in 1979 when the provision excepting minors and mentally incompetent persons from the general tolling statute

---

4. Plaintiffs also note a "sliding-scale" or "spectrum of standards" approach advocated by Justices Marshall, White and Stevens. *See, e.g., Craig v. Boren,* 429 U.S. 190, 212, 97 S.Ct. 451, 464, 79 L.Ed.2d 646 (1976) (Stevens, J., concurring); *Vlandis v. Kline,* 412 U.S. 441, 458–59 (1973) (White, J., concurring); *San Antonio Ind. School Dist. v. Rodriguez,* 411 U.S. 1, 98–99, 93 S.Ct. 1278, 1329, 1330, 36 L.Ed.2d 16 (1973) (Marshall, J., dissenting). While it may be true that a sliding-scale approach is in fact applied, a majority of the Supreme Court has never expressly adopted such an approach and this court declines to do so.

5. Plaintiffs contend that this court should apply a rationality test "with bite" as advocated by a leading commentator, *see* G. Gunther, *Constitutional Law* 688–93 (10th ed. 1980), and as plaintiff contends was applied by the Utah Supreme Court in *Malan v. Lewis & Lewis,* No. 17606, slip op. (Utah May 1, 1984). This court expresses no opinion as to whether that approach is necessary, but would reach the same conclusion even if such a test were applied.

was added. Contrary to plaintiffs assertions however, the legislative history indicates that the Utah legislature found that a malpractice insurance crisis continued to exist in 1979. *See* Transcription of Discussion and Vote in Utah House of Representative at Third Reading of H.B. 164 (Feb. 13, 1979). Containment of that perceived crisis is unquestionably a legitimate legislative objective.

Plaintiffs further contend that excepting minors from the tolling provision has no rational relationship to the objective of containing insurance costs because ninety percent of all claims are discovered within four years of the injury and less than one-seventh of all claims are brought by or on behalf of minors. *See* Note, *California's Medical Injury Compensation Reform Act: An Equal Protection Challenge*, 52 S.Cal.L.Rev. 829, 960–62 (1979). Additionally, plaintiffs assert that the provision may not accomplish the legislative purpose because the short statutory period may actually increase the number of claims filed.

■ The constitutionality of the measure does not depend on a court's assessment of its empirical success or failure. It is sufficient if the legislature *"could rationally have decided"* that the means chosen will promote the legislative objectives. *Minnesota v. Cloverleaf Creamery Co.*, 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981). The court concludes that the exclusion of minors and legally incompetent persons from the general tolling provision is rationally related to the stated purpose of containing the malpractice insurance crisis. That rationality is particularly evidenced by the facts of the present case. Serious permanent injuries to children are often cases of large potential damages. If the period in which such claims could be brought were tolled until the young child reached the age of majority, a heavy burden would be placed on insurance carriers in evaluating and defending against the claim, establishing appropriate reserve requirements, and setting rates. The percentage of medical malpractice claims brought by minors is far from insignificant. Moreover, the uncer-

tainty inherent in tolling the period in which such claims may be brought could drastically affect insurance rates of at least the segment of health care providers that provide services exclusively to minors.

Weighing the need to contain malpractice insurance costs and the need to ensure the availability of health care services crisis against the competing interests of minors and mental incompetents whose parents or guardians fail to initiate an action is particularly appropriate for the legislature, not the courts. The Utah legislature has done so and the statutory provision is reasonably related to accomplish a legitimate legislative purpose. The court therefore concludes that the classification at issue does not amount to a denial of equal protection.

### B. *Due Process—Open Courts*

■ Plaintiffs raised a due process challenge to the Malpractice Act's limitations provision in their initial memorandum, although that argument is not addressed in their supplementary memorandum. In any event, the provision does not violate plaintiffs constitutional due process rights. *See, e.g., Brubaker v. Cavanaugh*, 741 F.2d 318 (10th Cir.1984); *Reese v. Rankin Fite Memorial Hospital*, 403 So.2d 158 (Ala.1981); *Donabedian v. Manzer*, 153 Cal.App.3d 592, 200 Cal.Rptr. 597 (1984); *Wheeler v. Lenski*, 8 Kan.App.2d 408, 658 P.2d 1056 (1983).

Plaintiffs have also challenged the statute based on the open courts provision of the Utah Constitution. Utah Const. art. I, § 2. Relying on the concurring opinion of Justice Howe in *Meyers v. McDonald*, 635 P.2d 84, 88 (Utah 1981), plaintiffs contend that there is an unconstitutional denial of access to the courts where a plaintiff's claim is barred by a statute of repose before an injury is ascertained. That general issue, however, is not raised by the facts of this case. Indeed, as discussed above, the plaintiff in this action discovered the alleged legal injury before the statute ran. Even if the issue were implicated, this court previously concluded in *Wheaton v. Jack*, Civ. No. C–82–0039, slip op. (D.Utah

Aug. 9, 1982), that the statute does not violate the open courts provision.

For the reasons set forth herein, IT IS HEREBY ORDERED that defendants' motion for summary judgment is granted.