667 A.2d 1131

Isabella WASILSKY, Administratrix of the Estate of George W. Wasilsky, Deceased, Appellant,

v.

OWENS–CORNING FIBERGLAS CORP., Pittsburgh Corning Corp., Celotex Corporation, H.K. Porter Company Inc., Eagle–Picher Industries Inc., Southern Textile Company, GAF Corporation, Rubberoid Company Inc., Owens–Illinois Inc., Keene Corporation, Armstrong World Industries Inc., Armstrong Cork Company, United States Gypsum Company, Porter Hayden Co., Foster Wheeler Corporation, York–Shipley Inc., Pars Manufacturing Company, Phelps Packing and Rubber Company, Hercules Packing Corporation, Anchor Packing Company, Harnischfeger Corporation, A.C. & S. Corporation, Flexitalic Gasket Company, Flintkote Company, Garlock Industries, Fibreboard Corporation, Uni–Royal Inc., National Gypsum Company, Peltz Company, Brand Insulations Inc., Raymark Corporation, Turner & Newall, A.P. Green Refractories Companies, Allied Corporation, Harvey Hubbell Inc., Prudential Supply Corp., J.H. France Refractories Inc., Riley Stoker Corporation, Harbison Walker Refractories, American Hoist and Derrick Company, Drever Furnaces, Selas Corporation of America, Selas Furnaces, Ray Oil Burner Company, Bickley Furnaces Inc., National Airoil Burner Co., Superior Boiler Works Inc., H.B. Smith, Keeler/Dorr–Oliver Boiler Company, International Boilers, and Cleavor Brooks.

Superior Court of Pennsylvania.

Argued June 8, 1995.

Filed Oct. 24, 1995.

Reargument Denied Jan. 3, 1996.

Robert J. O'Shea, Jenkintown, for appellant.

Christopher H. Jones, Conshohocken, for Harbison Walker Refractories, etc., appellees.

Before McEWEN, TAMILIA and KELLY, JJ.

PER CURIAM:

Order reversed; case remanded. Jurisdiction relinquished.

TAMILIA, Judge, concurring and dissenting.

The majority vacates the Order of summary judgment in this case and remands for a jury trial as to liability in a reverse-bifurcated hearing because it holds issues of fact exist as to the time of discovery of appellant's decedent's illness. I disagree and would affirm the Order granting summary judgment to the defendant/appellee.

The trial court properly allowed appellee to preserve the motion for summary judgment to the liability (second phase) of the reverse-bifurcated proceeding because of the complexities of the second phase and possibility the disposition in the first phase would render issues of liability moot. Although failure of appellant to serve and file a designation of the record it intended to reproduce as well as statement of issues to be argued on appeal violates Pa.R.A.P. 2154, the failure to comply does not impede review of the issues or prejudice the parties so this Court may address the merits of the appeal. (Majority Memorandum, p. 7.) I join the majority in this holding. Likewise, the majority was correct in sustaining Judges Doty and Moss, the first in postponing consideration of the motion until the second phase of the trial and Judge Moss in properly considering the motion when the second phase began.

As to the grant of the motion for summary judgment, I agree with the trial court that as a matter of law, no issue of material fact existed which presented a matter for resolution by the jury as the statute of limitations, even though extended by the discovery rule, has expired.

The majority states "[i]n granting appellees' motion for summary judgment, Judge Moss relied exclusively on notations in decedent's medical records to determine a genuine issue of material fact." *Id.* at 12. The majority gives no reasons why medical records or affidavits, uncontested and properly admitted on the record, cannot be used for that purpose. "Relying on decedent's medical reports, Judge Moss concluded that, by 1983, decedent knew that he had asbestosis or an asbestos related disease and, therefore, the statute of limitations had expired in 1985." *Id.* The majority goes on to say "[i]t was not, however, within the judges discretion to determine whether decedent knew prior to 1987 that decedent had asbestosis. Rather, it is the role of the jury as fact finder, not Judge Moss, to determine whether decedent knew or should have known prior to 1987 that decedent had asbestosis." *Id.* at 13.

The majority is in error in concluding that the facts of this case require a jury finding as to whether decedent had notice of his asbestosis before the statute had run. The majority is proposing a subjective standard, which in effect would hold that what controls is whether the decedent "could" have known as opposed to whether he "should" have known of his asbestosis. If the standard is he *could* have known, then there is room to determine if he did or did not know, which leaves room for dispute. When the standard is whether he *should* have known, his duty is measured only by the facts which, if diligently pursued, would have unerringly led to the determination that he had asbestosis or an asbestos-related disability. The decedent was not permitted to ignore his own medical reports and symptoms, even if the doctors did not communicate their contents to him. It is not surprising that Judge Moss found it incredible that decedent claimed not to have been informed by his doctors of his asbestosis, since this is the standard response from most plaintiffs faced with expiration of the statute of limitations and its extension by the discovery rule. The majority relies heavily on the dissent in *Ingenito v. AC & S, Inc.,* 430 Pa.Super. 129, 633 A.2d 1172 (1993), which espouses a subjective test and requiring a

"smoking gun" before summary judgment can be entered. Obviously, the majority in this en banc case did not agree.

The test which has been applied pursuant to the discovery rule has been frequently stated and is now a fixture in the law. *Ingenito, supra; Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973 (1985). If there was any question that this rule was weakening or that it was expanding to become more subjective rather than objective in relation to when a claimant is required to take definitive action, it has been laid to rest by the most recent pronouncement of the Pennsylvania Supreme Court in *Cochran v. GAF Corporation, et al.,* — Pa. ——, 666 A.2d 245 (1995). There, the Supreme Court stated:

> Reasonable diligence is just that, a reasonable effort to discover the cause of an injury under the facts and circumstance present in the case. Long ago we recognized that "[t]here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." *Deemer v. Weaver,* 324 Pa. 85, 90, 187 A. 15 [215], 217 (1936) (quoting *Madole v. Miller,* 276 Pa. 131, 137, 119 A. 829, 831 (1923). Reasonable diligence is an objective, rather that a subjective standard. Under this standard, the plaintiff's actions must be evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 292, 505 A.2d 973, 988 (1985) (quoting *Petri v. Smith,* 307 Pa.Super. 261, 271, 453 A.2d 342, 347 (1982)). *See also* Restatement (Second) of Torts § 283 comment b. Despite the objective nature of the reasonable diligence standard, "[i]t is sufficiently flexible, however, to take into account difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Burnside,* 351 Pa.Super. at 292, 505 A.2d at 988 (quoting *Petri,* 307 Pa.Super. at 271–72, 453 A.2d at 347). Thus, this case law teaches that a plaintiff is not under an absolute duty to

discover the cause of his illness. Instead, he must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case.

*Id.* at ——, 666 A.2d at 249 (quoting *Baumgart v. Keene,* —— Pa. ——, 666 A.2d 238 (1995) (Opinion in Support of Reversal at —— – ——, 666 A.2d at 243–44).) Continuing, the Court stated:

> Our case-law further enlightens us on what is reasonable under the facts of a particular case. It is well settled that the statute of limitations is not tolled by mistake or misunderstanding. *Pocono Intern. Raceway [v. Pocono Produce],* 503 Pa. [80] at 84, 468 A.2d [468] 471 [ (1983) ]; *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 93, 204 A.2d 473, 475 (1964). Also, a diligent investigation may require one to seek further medical examination as well as competent legal representation. *Murray v. Hamot Medical Center,* 429 Pa.Super. 625, 634–35, 633 A.2d 196, 201 (1993), *appeal denied,* 540 Pa. 632, 658 A.2d 796 (1994) (citing *Souders v. Atlantic Richfield Co.,* 746 F.Supp. 570, 573 (E.D.Pa.1990) citing *United States v. Kubrick,* 444 U.S. 111, 123 [100 S.Ct. 352, 360, 62 L.Ed.2d 259] (1979)).

(*Cochran, supra* —— Pa. at —— – ——, 666 A.2d 245.)

Applying the above standards, the exercise of due diligence in this case required the decedent to seek further medical examinations as well as competent legal representation in 1982 after being examined at Abington Memorial Hospital when he was x-rayed for sinus and chest problems. The hospital report by L. Margapida, M.D., states on March 8, 1982:

> The examination of the chest in the PA and lateral projections shows the left lung to be relatively clear. In the right side there are linear densities compatible with areas of fibrosis. There is pleurodiaphragmatic calcification noted in the lateral projection and not identified with certainty in the frontal projection. The heart is not enlarged in its overall size but shows some prominence of the left ventricle region. The aorta is somewhat tortuous.

Because of the pleurodisphregastic calcification the possibility of asbestosis should be considered in this case.

L. Margapida, M.D.

On October 14, 1983, decedent was admitted to Chestnut Hill Hospital with a diagnosis of myocardial infarction, congestive heart failure and probable asbestosis. On the discharge date of October 29, 1983, the report, dictated by Jennifer Daniels, M.D., disclosed the decedent was referred by his family doctor for x-rays and an electrocardiogram due to his wheezing and shortness of breath. The x-rays disclosed, lungs: Rales [1] at the right base and rales one-half way up on the left. The x-rays taken on October 21, 1983 were examined by Dr. Weis, radiologist, who reported:

There has been no change in the appearance of the chest since 10/19/83. The residual findings may represent chronic interstitial and pleural disease. *Evidence of asbestosis is present with bilateral pleural thickening and diaphragmatic calcification.*

(Emphasis added.)

The majority considers these reports irrelevant although they are affidavits on the record meeting the requirements for a grant of summary judgment.

Judge Moss, in her carefully detailed Opinion, applied the law as it relates to summary judgment, the statute of limitations and the discovery rule in explaining her decision:

Wasilsky's 1983 medical records reported a history of shortness of breath before a nasal polypectomy in 1982. This surgery apparently relieved his shortness of breath initially but soon after Wasilsky began wheezing and was hospitalized in October 1983, complaining of wheezing and breathlessness upon light exertion. A contemporaneous medical history taken during that hospitalization, based on patient information and prior medical records, revealed he had "a history of pneumoconiosis, diagnosed by x-ray several years ago." An x-ray report from October 1983 stated:

---

1. rale: an abnormal sound that accompanies the normal respiratory sound. Webster's *Ninth New Collegiate Dictionary,* Copy 1984.

"evidence of asbestosis is present with bilateral pleural thickening and diaphragmatic calcification"; said report was sent to Wasilsky's treating physician who monitored him. His discharge report indicated a diagnosis, inter alia, of "pneumoconiosis—probably asbestosis."

In medical records from March 1982, Wasilsky specifically reported an asbestos exposure history. Further, a 1982 x-ray report stated: "Because of the pleurodiaphragmatic calcification the possibility of asbestosis should be considered in this case." (Defendant's Exhibit 1).

In deciding a Motion for Summary Judgment, courts utilize standards set forth by the Superior Court of Pennsylvania in *Samarin v. GAF Corp.*, 391 Pa.Super. 340, 346, 571 A.2d 398, 401 (1989):

> A motion for summary judgment may properly be granted only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'

*Id.* [571 A.2d] at 401 . . . .

The *Samarin* Court continued, "[i]t is not part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried." *Id.* [571 A.2d] at 402. Summary judgment should only be entered in those cases which are clear and free from doubt. *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 190, 544 A.2d 50, 52 (1988) (citing *Weiss v. Keystone Mack Sales, Inc.*, 310 Pa.Super. 425, 430, 456 A.2d 1009, 1011 (1983)). Using this standard we must decide whether Plaintiff's claim was instituted within the prescribed limitations period.

.    .    .    .    .

Here it is abundantly clear Plaintiff was not duly diligent in pursuing facts upon which his claim is based or timely filing suit. In October, 1983, Wasilsky knew he had long-term workplace asbestos exposure and shortness of breath, a classic symptom of asbestos-related pleural disease. His

x-ray reports and medical records from 1982 and 1983 were replete with probable asbestosis diagnoses. We find it completely incredible Wasilsky's treating physicians did not inform him even once about multiple diagnoses of "pneumoconiosis—probably asbestosis." However, even if the incredible happened, he could and should have ascertained his x-ray results and the origin of his chronic breathing impairment at least 3 years before December, 1986. "The failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law." *Ingenito*, 430 Pa.Super. at 133, 633 A.2d at 1175 (citing *Owens v. Lac D'Amiante Du Quebec, Ltee.*, 656 F.Supp. 981, 983 (E.D.Pa. 1987), *aff'd*, 833 F.2d 306 (3d Cir.1987)).

In Pennsylvania, a legally cognizable claim for pleural thickening arises when plaintiff experiences physical symptoms linked to the disease. *DiDio v. Philadelphia Asbestos Corporation*, 434 Pa.Super. 191, 201–202, 642 A.2d 1088, 1092–1093 (1994); *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993), *alloc. granted*, 539 Pa. 651, 651 A.2d 539 (1994). The uncontroverted evidence is sufficient to demonstrate Mr. Wasilsky knew or reasonably should have known in October, 1983 he had developed symptomatic pleural disease from his workplace asbestos exposure. While the "discovery rule" may have tolled said limitations period in the 1970s, by October, 1983, the statute had clearly begun to run because Wasilsky knew or in the exercise of reasonable diligence should have known he had been injured from workplace asbestos exposure. The statute expired in October, 1985 but Plaintiff did not institute this suit until December 1988.

(Slip Op., Moss, J., 1/13/94, p. 4.)

I could not have said it better and this Court should affirm the Order of summary judgment.