434 A.2d 1273

**Lisa DeSANTIS, A Minor by her Parents and Natural Guardians, Raymond DeSantis and Lois DeSantis, Appellants,**

**v.**

**Lawrence L. YAW.**

Superior Court of Pennsylvania.

Argued April 22, 1981.

Filed Sept. 11, 1981.

Richard K. Hohn, Philadelphia, for appellants.

D. Barry Pritchard, Jr., Lansdale, for appellee.

Before WICKERSHAM, MONTEMURO and WATKINS, JJ.

MONTEMURO, Judge:

On January 7, 1980, plaintiff, Lisa DeSantis, a minor, brought suit in trespass against defendant, Lawrence L. Yaw, for injuries suffered by her in an automobile accident which occurred September 10, 1977. The defendant alleged as New Matter that the claim was barred by the statute of limitations.

The issue was argued, and the Court found for the defendant on the pleadings. The plaintiff filed a Concise Statement of Matters Complained Of On Appeal, and set forth as her sole ground for reversal of the decision barring her action that the statute of limitations should be unconstitutional as applied to minors.

The lower court's opinion held that statutes of limitation are favoured in law, and that plaintiff's constitutional arguments, while interesting, were without merit. This court, however, has examined the issue from an historic approach as well as from a constitutional perspective and has become convinced that the traditional approach of our courts to the statute of limitations as applied to minors no longer fits comfortably into the framework of the law. Review of the matter is timely.

Historically, western civilization has considered the minor child as the belonging of its father. The *paterfamilias* of

Roman times had absolute power of his household, and could sell his children into slavery or kill them at will.[1]

Under the English common law doctrine of *paterfamilias* a father still retained an "unquestioned right" to the services and custody of minor children, and it appears that this right did not depend upon fulfillment of corresponding duties, at least not upon any legally enforceable ones.[2] Blackstone regarded the duty of support as a "natural" duty but absent statute not a *legal* one, and courts of the United States have also pronounced the duty merely "moral," 42 Harvard Law Review, *supra* note 2, at 112.

The familiar doctrine of reciprocity of duties of support and rights to custody and services appears to have been the creation of common law judges interested in "spinning out a symmetrical pattern of rights and duties," *Id.* Even in relatively modern times the right to recover for a child's injury remained in the father alone and did not extend to a mother, even if widowed and providing nursing for a minor who had brought income to the household prior to an injury. *Fairmont and Arch Street Passenger Railway Co. v. Stutler,* 54 Pa. 375 (1867).

Interestingly, the *Fairmont* court also distinguished between intentional torts and negligent ones, and concluded that even a father would have been able to recover only for seduction of a daughter or battery of a son, which represented willful trespasses upon his own rights in his children. For negligent injury, recovery would lie in the child himself.

Then as now, an infant was required to bring his action through an adult as guardian or next friend. 13 *Standard Pa. Practice,* 325–326, 335. Presumably, therefore, the only recovery conceived of as possible in *Fairmont,* would be to the child for pain and suffering and for loss of earnings

1. Hon. Harry M. Fisher, "Pater Familias—A Cooperative Enterprise," 41 Ill.L.R. 27, 28 (1946) and authorities cited therein.

2. Note: Harvard Law Review, Vol. 42 at 112, "Reciprocity of Rights and Duties Between Parent and Child," (1928), also Fisher, *supra* at 31–35.

538

after reaching his majority, and these would have to be sued for by the parent as next friend.

That position appears to have been an anomaly even for the era in which the holding was published, for the identical court only three years before had reached a different result altogether in *Oakland Railway Co. v. Fielding*, 48 Pa. 320 (1864).[3] The father in *Oakland* retained the recovery awarded him by the lower court for negligent injuries sustained by his son, and the appellate court approved damages limited to "compensation for loss of services, for nursing, and for surgical and medical attendance." *Id.* at 327.

Within thirty years, however, the rights to recovery for both parent and child were clarified and codified in the Act of 1897. Act of May 12, 1897, P.L. 62 sec. 1, 12 P.S. § 1625; 13 *Standard Pa. Practice*, ch. 64 sec. 4, 328–329; 7 *Goodrich-Amram*, Rule 2228(b), "Joinder of Parent and Child" at 418. The actions of parent and child were recognized and ordered to be brought in the same case under penalty of barring the claim of the unjoined party, *Id.* Apparently no trace remained of the notion that the parents' recovery depended upon the intentional nature of the tort as a deliberate invasion of parental rights.[4] Most modern authorities, however, do still view the parents' losses as "more properly treated as an action for damages to property rights," than as a personal injury action. 59 Am.Jur.2d at 213; *accord*, 67A C.J.S. Parent & Child at 520–521.

The pattern codified in 1897 has continued to the present date. The child's cause of action and the parents' cause of action are independent of each other, yet both are left to the discretion of the parent and both are barred after the

---

**3.** *Fairmont* was argued in Philadelphia and *Oakland* in Allegheny county. Oddly, Woodward, C. J., participated in the decision in both cases, which makes the variance in decision especially hard to fathom.

**4.** The holding that recovery for the father depended upon the intentional nature of the tort and also upon an analogy to the master-servant relationship was not a quirk of the *Fairmont* court, however. The same arguments are presented in 3 Blackstone 140–142, and may be traced in case law, *see* e. g. *Logan v. Murray*, 6 Serg.R.Pa. 175.

passage of two years from the date of the accident. The operation of 42 Pa.C.S.A. 5524 [the two-year statute of limitations for negligent tort recovery] in conjunction with 42 Pa.C.S.A. 5533 [disabilities do not extend a statute of limitations unless the statute itself so provides] accomplishes this result.

There is no doubt at all that the present law of this Commonwealth is expressed by the lower court's opinion in the instant action. An example of facts congruent with the argument of the instant appellant's counsel can be found in the case of *Von Colln v. Pennsylvania Railroad Co.*, 367 Pa. 232, 80 A.2d 83 (1951).[5] There, the appellant was a minor who had been injured while a resident of a Children's Home. At a time well beyond the statutory limit, but while she was still a minor, appellant brought her action by her husband and guardian, an adult.

The Supreme Court of Pennsylvania affirmed, without soul-searching, the lower court's decision that minors were bound by the provisions of the statute of limitations equally with adults.

"The settled rule is that infants as well as all others are bound by the provisions of such statutes." *Id.*, 367 Pa. at 234, 80 A.2d 83.

This court is therefore bound, as was the lower court, to follow the "settled rule" in the matter; and we affirm the Order of September 4, 1980, granting defendant judgment on the pleadings based on a statute of limitations defense.

The decision is not a comfortable one, however, and it is our opinion that this question deserves serious reconsideration by the courts at this time. Recent advances in the laws regarding children's rights have made an automatic decision growing out of a tradition that viewed children as possessions completely unpalatable.

5. The facts of the action presently at bar are less sympathetic to the argument counsel presents. There appears to be no reason why Lisa DeSantis' parents could not have brought this action a few months earlier and avoided the statute of limitations problem altogether.

Our citizens are guaranteed the right to acquire, possess, and protect property, Constitution of Pennsylvania, Article 1, Section 1. A right to sue on "a chose in action," despite its intangible nature, is ordinarily regarded as a form of property. 63 Am.Jur.2d, "Property," § 26, p. 312; 30 *P.L.E.* "Property" § 43, p. 38. With perfect logic, the common law assumed that a father who "owned" his child's chose in action had the prerogative of allowing that right to lapse. With the advances that recognized the child's right to recover, that assumption became harder to sustain.

The capacity of the common law to adopt itself to changing mores has long been recognized as one of its greatest strengths. See e. g. *Miller v. Monsen,* 228 Minn. 400, 37 N.W.2d 543 (1949); *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). In the field of children's rights it has made concrete gains by a complicated re-balancing of legal concepts: the relationship of parent and child has become a "status, not a property right," see e. g. *Commonwealth ex rel. Berg v. Catholic Bureau,* 167 Pa.Super. 514, 76 A.2d 427 (1950); *Commonwealth ex rel. Teitelbaum v. Teitelbaum,* 160 Pa.Super. 286, 50 A.2d 713 (1947), and yet at the same time the property rights of children in their parents, corresponding to that of parents in children, have increasingly been recognized.[6] A harder look at the outcome in juvenile criminal matters has led to re-assessment of constitutional rights in children, also on a decisional basis, see discussion *infra.*

Statutory law has tended to keep pace with the common law. Some states have already provided protection for minors against the running of the statute of limitations.[7] Our own jurisdiction has provided partial protection by

---

**6.** By 1924 the Oklahoma court in dictum recognized a tort of malicious interference with a child's right to parental support. *Sharum v. Sharum,* 101 Okl. 273, 225 P. 682, and in the 1940's three jurisdictions recognized a right of action in children for enticement away of a parent. *See 12 A.L.R.2d 1178.* The very recent Massachusetts case of *Ferriter v. Daniel O'Connell's Sons,* see *infra,* has extended the right to recovery for loss of parental companionship and society to actions based on negligent tort injury of the parent.

**7.** See e. g. New Jersey Statutes 2A:14–21.

extending recognition of legal disability tolling the statute to a potentially huge class of injured minors—those harmed in vehicle accidents,[8] *Salvado v. Prudential Property and Insurance Co.*, 287 Pa.Super. 304, 430 A.2d 297 (1981). The court in *Salvado* squarely considered the awkwardness of permitting the causes of minors to continue to maturity:

> We cannot disregard the clear meaning of [the No-Fault section tolling the statute of limitations] merely because, as appellee contends, a literal interpretation will adversely affect the ability of no-fault carriers to settle claims of minors. *Id.*, 287 Pa.Super. 308, 430 A.2d at 299.

Appellee in the instant action naturally has stressed the salutary effects of the statutes of limitation. Its brief states that the object is "not to clean up dockets, but to force claimants to bring their actions while the events and evidence are still fresh." (R. Brief of Appellee, p. 2). It then quotes the Supreme Court's 1922 decision in *United States v. Oregon Lumber Co.*, 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261, to the effect that statutes of limitations "promote repose," "give stability to human affairs," and "stimulate to activity and punish negligence." (*Id.* at 299–300, 43 S.Ct. at 103). The brief then quotes a Federal Court decision, *Pittman v. United States*, 210 F.Supp. 763 (N.D.Cal.1962), aff'd 341 F.2d 739 (9th Cir. 1965), cert. den. 382 U.S. 941, 86 S.Ct. 394, 15 L.Ed.2d 351 (1962), which reiterates the viewpoint of our own Supreme Court in *Von Colln, supra*, that the "general rule" provides no special protection to infants, absent a statutory provision.

This once again begs the real question by, in essence, stating that whatever *is*, is right.[9] It also places tremendous importance on a public policy favouring repose of actions and punishment for delay, while paying almost no attention

8. In fact, the plaintiff in the instant action appears to belong to this class of injured minor. Although counsel mentioned some provisions of 40 P.S. § 1009.101 *et seq.* in the complaint, he has never advanced argument under § .106(c)(5) of the No-Fault Act, which is concerned with the statute of limitations and legal disability.

9. That the common law has a remarkable capacity for change cannot be doubted. See argument at text *infra* between Notes 11–12.

at all to what certainly appears to be violation of a fundamental right: a chose in action is a form of personal property that without question now belongs to the injured child himself, and yet he is legally debarred from pursuing his claim.[10]

The minor's tender age has long been recognized as a legal disability, merely a lack of capacity, and *not* a punishable lack of moral fiber. A statute designed to "force" a claimant incapable of acting to act is certainly suspect. It is no answer to claim, as appellees do, that equal application of the statute "to minors and parents alike discriminates against no class or group and denies no one, either in law or in fact, the right to bring suit. .... a limitation statute does not prevent any minor, simply because she is a minor, from bringing suit." (R. Brief of Appellee at 4)

Plainly, under the law of this Commonwealth minors have *never* been permitted to initiate their own suits, even if they were old enough and wise enough to do so. Contrary to the statement in appellee's brief, the law does in fact prevent minors, simply because of their status as minors, from bringing suit.

Not all children have parents. The minor in *Von Colln* did not. Appellee's proposition that the limitation is fair "as to minors and parents" cannot be extended to assume that orphanages, foster parents, and juvenile homes have the emotional dedication to fight a prompt legal battle and to maintain the often slow progress through the court system. A foster mother may be honestly dedicated to hot meals and clean linen and emotional support yet quail at the thought of embarking on several years of legal battle for a member of her changeable brood. As to parents themselves, some are lazy or frightened or ignorant or religiously opposed to legal redress. Still, they have *their* remedy available to them if

10. The Massachusetts Supreme Court has expressed itself on the issue of public policy versus rights of children as follows:

Children enjoy the same right to protection and to legal redress for wrongs done them as others enjoy. Only the strongest reasons, grounded in public policy, can justify limitation or abolition of those rights. *Sorensen v. Sorensen*, 369 Mass. 350, 359, 339 N.E.2d 907, 912 (1975), *accord, Ferriter, infra.*

they choose to use it. A child does not. The situation comes to this: a personal property right belonging to a legally faultless citizen may and often has been forfeited because no legally competent party has volunteered to undertake an action in the child's behalf. By the time the child reaches maturity the property has vanished. For this, it appears, no one is responsible. Can this lack of remedy comport with due process?

Although *Terry Appeal* and *McKeiver Appeal*, 438 Pa. 339, 265 A.2d 350 (1970) treat the very different problems posed by children in the criminal system, telling analogies to the instant problem can be discerned. The court in *Terry* remarked that the Supreme Court case of *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) was the first case in over sixty-five years which seriously considered the constitutional problems posed by the juvenile court system, and it pointed out that "unbridled discretion, however benevolently motivated, is frequently a poor substitute for principle and procedure." *Id.*, 438 Pa. at 343, 265 A.2d 350.

"The proper inquiry" of the court then became the decision as to whether a jury trial was as indispensable as a Constitutional safeguard for children as it had been determined to be for adults, *Id.*, 438 Pa. at 348, 265 A.2d 350. In balancing the *pros* and *cons* of the right to jury trial, it is significant that every benefit weighed by the court *went directly to a public policy to give the child extra protection;* [11] not one public policy rule based on the needs of the state, the court system, or the victim is enumerated.

The right to a jury is instead balanced off against the traditional benefits the juvenile system at its best offers the child. These benefits make a formidable list: an experienced Bench; access to an unusual amount of rehabilitative expert help; individualized treatment; privacy; a lack of adversary attitudes permitting flexibility of decision.

In short, *Terry* assumes that children may be treated differently from adults but that any deprivation of due

11. For the similar viewpoint of the Massachusetts court in civil matters, see preceding Note No. 10.

process as permitted to children should be tested for its "fundamental" nature against gains to the child himself in the trade-off. By this test, of course, the statute of limitations as applied to children has no redeeming constitutional features. There is no way in which a minor child can be said to benefit by loss of his action after two years.

However, as discussed above, the statute of limitations problem is a civil matter, not a criminal one, and deprivation of the child's right to property in the interest of a policy of bringing only fresh tort claims into court must necessarily be weighed on a different scale. It should, however, *be* weighed, and not simply subsumed under a "settled rule" of law.

Approaching the matter, therefore, from a civil viewpoint, we find that courts in the past have not hesitated to create new causes of action or abolish longstanding immunities when they have felt the need to conform the law to a changing society. Even a brief sampling of key cases from United States jurisdictions during this century makes the reader reflective: *See e. g. International News Service v. Assoc. Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918) [recognizing a news-gatherer's interest in the news]; *Hitaffer v. Argonne Co.*, 87 U.S.App.D.C. 57, 183 F.2d 811, (1950), overruled on other grounds, *Smither & Co. v. Coles*, 100 U.S.App.D.C. 68, 242 F.2d 220, cert. den. 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1129 (1957) [wife permitted loss of consortium]; *Hargrove v. Town of Cocoa Beach*, 96 So.2d 130 (Fla.1957) [abrogating the doctrine of sovereign immunity]; *Gelbman v. Gelbman*, 23 N.Y.2d 434, 245 N.E.2d 192, 297 N.Y.S.2d 529 (1969) [abolishing intrafamily tort immunity for negligence]; *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) [allowing damages for violation of fourth amendment rights]; *Ferriter v. Daniel O'Connell's Sons, Inc.*, —— Mass. ——, 413 N.E.2d 690 (1980) [children's right to recover for loss of parental companionship and society].

*Ferriter, supra*, is of particular interest as it too concerns children's rights. In *Ferriter*, the court re-examined an

earlier argument put forth in the 1950 case of *Nelson v. Richwagen*, 326 Mass. 485, 95 N.E.2d 545. The *Nelson* court sustained a demurrer to a minor child's action for enticement of her mother to desertion, largely on grounds that the child had no legal entitlement to her parent's society.[12] The *Ferriter* court, however, discovered that the situation had changed:

> That proposition is no longer true. In an action for wrongful death, the children of the deceased are "persons entitled to receive the damages recovered . . . for "loss of the reasonably expected . . . society . . . of the decedent."

The court then decided that when a child suffers from loss of parental nurture through negligent injury rather than death, no sensible distinction could be made, and the *Ferriter* children were held to have a viable claim. By analogy, a provision of our own No-Fault law becomes relevant. Our legislature has afforded to minors injured in motor vehicle accidents an exception to the bar of the statute of limitations.[13] The courts of Massachusetts could see no reason to distinguish loss of parental society because of *death,* from loss of parental society because of *injury*; the child was perceived as legally entitled to his relief from harm in *either* instance. Similarly, distinguishing tort by motor vehicle from other negligent injuries appears invidious. Whether the impairment that the injured adult suffers from is the

12. Again, this is a logical extension of the common law view. 3 W. *Blackstone Commentaries* at 143–144 (1768) states as follows:

We may observe that, in these relative injuries, notice is only taken of the wrong done to the superior of the parties related, by the breach and dissolution of either the relation itself or at least the advantages accruing therefrom; while the loss of the inferior by such injuries is totally unregarded. One reason for which may be this: that the inferior hath no kind of property in the company, care, or assistance of the superior as the superior is held to have in those of the inferior; and therefore, the inferior can suffer no loss or injury. Lewis' edition, p. 1139. (Notes omitted)

13. In fact, the recently decided case of *Etevenia Salvado et al v. Prudential Property and Casualty Insurance,* 287 Pa.Super. 304, 430 A.2d 297, 1981, determined that the two-year statute of limitations was tolled in the case of minors *and* that the two-year limit for further benefits after final payment of a first award was *also* tolled.

result of a childhood vehicle injury, a hunting accident, or a fall from a rotting balcony is immaterial to his embarrassment, pain, and loss of future earning power. The legislature has already entitled children to relief from the statutory bar and has found legal entitlement to redress for tort injury under certain circumstances; logic would suggest that the entitlement be extended to cover tortious injuries indistinguishable in their effect on the injured person.[14]

If the right is not extended, then an Equal Protection argument becomes apparent. Children injured tortiously during their minority are at present unequally treated: children injured by motor vehicle may bring suit during their entire minorities by an adult and for another two years in their own name. Children tortiously injured in any other manner have a two-year statutory limit and may enforce their claims only through the voluntary services of an adult, unless they happen to attain majority during the statutory period.

Tortiously injured children would appear to be a reasonable classification; certainly until passage of the No-Fault Law that group suffered equally in its legal treatment. No rational state policy leaps to mind to explain the present difference in treatment.

If the state is willing to condone long-outstanding cases for thousands of vehicle-injured children every year, from the infant *enroute* home from the hospital as well as the adolescent with a learner's permit, why should it find preserving a cause of action for other negligent injuries more intolerable? Proof is never easy after the passage of many years, but no more so in one tort injury than in another. That an issue may be difficult of proof should not prevent a plaintiff from presenting proof if he can do so.

None of the arguments presented in this opinion is designed to advocate a view of equal protection for children

14. *Hitaffer, supra,* 183 F.2d at 816–817 makes a similar argument *re* the "legally protected" interest in consortium; prior to that holding a wife could recover only for intentional invasions and not for negligent ones, but the *Hitaffer* court found the distinction "neither legal nor logical."

that leads to what Professor Lawrence Tribe of Harvard Law School calls a "child-blind" society. We agree with the professor that to tie the movement for justice for children too firmly to a sense of "the historically-rooted oppression of a group properly classified as such" may at times run counter to the real needs of the group by "ignoring its distinctiveness." As Tribe himself expresses it:

... in some settings, classification as a substitute for thought may *itself* work grave injustice—as when a person's status as infant, child or adolescent is invoked as a sufficient justification for allowing others to speak, while the person most intimately affected remains unheard and often essentially unseen. Tribe, *American Constitutional Law* (1978) pp. 1077–1078.

In the civil cases of *Ferriter* and *Hitaffer* discussed *supra*, courts found that in logic and in law the child and the wife *had* legally protected interests in consortium despite ancient law declaring the contrary. In contrast, the criminal case of *Terry* held that the right to jury trial, although indispensable to adult justice, was not constitutionally mandated in juvenile cases. Positive protections available to the child justified the departure from adult procedure.

A flexible approach to matters affecting minors is important. We do not intend to substitute "classification as a substitute for thought." It does appear, however, that the person's status as infant is invoked under present law as sufficient justification for allowing other persons to act or not act in his behalf.

Argument for the State purposes as outlined has several serious flaws: a conspicuous lack of any balancing of benefits to the child, or any statement of inconvenience to the state beyond what is endured in vehicle cases, or any concept of equal protection to all tortiously injured children. It is time to rethink the law in this area and seriously consider change.

The order of the lower court is affirmed.

WATKINS, J., files concurring opinion.

WATKINS, Judge, concurring:

I concur in the result reached by the Majority.

The Act setting forth the time periods in which a civil action may be maintained is not unconstitutional merely because it fails to make a special exception for minors. *Von Colln v. Pa.R.R. Co.*, 367 Pa. 232, 80 A.2d 83 (1951). Furthermore any possible harm which may be suffered by a minor whose parents or guardians fail to initiate any action against a potential tortious wrongdoer within the appropriate time period may be outweighed by the chaos, uncertainty, and severe prejudice which will occur to those accused of tortious conduct, their insurance carriers, and ultimately to the insurance carriers' ratepayers when lawsuits are permitted to be initiated decades after the occurrence of the incident giving rise thereto. Before such a sweeping change is made the question of "reserve requirements" imposed on insurance carriers and the resulting effect on insurance rates as well as many other issues must be addressed. The Legislature, and not the courts, is the proper forum for the resolution of such issues.