IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicole B., individually and      :
on behalf of N.B.,           :
         Appellant    :
                            :
    v.                 :  No. 868 C.D. 2018
                            :  ARGUED:  November 13, 2018
School District of Philadelphia,  :
Jason Johnson and Jala Pearson  :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                       FILED:  December 17, 2018

Nicole B. (Mother), individually and on behalf of N.B., appeals from the October 4, 2017 Judgment entered by the Court of Common Pleas of Philadelphia County (Trial Court) in favor of the School District of Philadelphia, Jason Johnson, and Jala Pearson (collectively, School District).  For the reasons that follow, we affirm the Trial Court's Judgment.

## **Background**

On October 25, 2011, Mother's then-eight-year-old son, N.B., was sexually assaulted by three male classmates in a bathroom at William C. Bryant Elementary School (Bryant Elementary) in Philadelphia.  At that time, N.B. was a fourth-grade student at Bryant Elementary.  According to Mother, the sexual assault was the culmination of two months of pervasive, and often violent, physical and verbal harassment endured by N.B. at school.[1]  Mother also alleged that before the sexual

---

[1] *See* Third Am. Compl., ¶¶ 15-59 (describing the nature and extent of the harassment experienced by N.B. between September 14, 2011 and November 4, 2011).

assault, both she and N.B. had reported the harassment to N.B.'s teacher and to administrators at Bryant Elementary, who did nothing to prevent or stop the harassing conduct.[2]

On January 7, 2014, Mother, in her individual capacity and on N.B.'s behalf, filed an Administrative Complaint with the Pennsylvania Human Relations Commission (Commission) against the School District of Philadelphia, asserting claims of gender and race discrimination under the Pennsylvania Human Relations Act (PHRA), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-963. On April 11, 2014, Mother filed a second Administrative Complaint with the Commission, asserting the same discrimination claims and adding Mr. Johnson, N.B.'s fourth-grade teacher at the time of the allegations, and Ms. Pearson, Bryant Elementary's then-principal, as defendants. The crux of Mother's allegations was that School District failed to adequately respond to Mother's and N.B.'s complaints of sexual and racial harassment and to protect N.B. from such harassment. Mother alleged that School District violated Section 5(i)(1) of the PHRA, 43 P.S. § 955(i)(1), which prohibits a public school and its employees from "either directly or indirectly" discriminating against an individual based on gender or race.[3]

---

[2] On November 4, 2011, Mother reported the sexual assault to the City of Philadelphia Police Department, which later arrested the three perpetrators. On November 5, 2011, Mother withdrew N.B. from Bryant Elementary.

[3] Section 5(i)(1) of the PHRA provides:

It shall be an unlawful discriminatory practice . . .

. . .

(i) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employe of any public accommodation, resort or amusement to:

The Commission rejected both Administrative Complaints as untimely. Under Section 9(h) of the PHRA, 43 P.S. § 959(h), Mother was required to file her Administrative Complaint with the Commission within 180 days of the last alleged incident of discrimination.[4] However, Mother did not file her Administrative Complaint until two years and two months after the final incident of discrimination against N.B.

On April 29, 2014, Mother filed a Complaint against School District in the Trial Court, alleging gender and race discrimination under the PHRA as well as common law tort claims. School District filed a Motion for Judgment on the Pleadings, asserting that because Mother's Administrative Complaint was untimely filed, she failed to properly exhaust her administrative remedies under the PHRA. The Trial Court denied

---

(1) *Refuse, withhold from, or deny to any person because of his race, color, sex, religious creed, ancestry, national origin or handicap or disability*, or to any person due to use of a guide or support animal because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals, *either directly or indirectly, any of the accommodations, advantages, facilities or privileges* of such public accommodation, resort or amusement.

43 P.S. § 955(i)(1) (emphasis added). An elementary school is a "public accommodation" under the PHRA. *See* Section 4(*l*) of the PHRA, 43 P.S. § 954(*l*).

[4] Section 9 of the PHRA provides in relevant part:

(h) Any complaint filed pursuant to this section *must be so filed within one hundred eighty days after the alleged act of discrimination*, unless otherwise required by the Fair Housing Act.

. . .

(j) At any time after the filing of a complaint, the Commission *shall dismiss with prejudice* a complaint which, in its opinion, is untimely with no grounds for equitable tolling, outside its jurisdiction or frivolous on its face.

43 P.S. § 959(h), (j) (emphasis added).

3

the Motion. Thereafter, Mother filed an Amended Complaint and a Second Amended Complaint. School District filed Preliminary Objections on the ground that Mother failed to exhaust her administrative remedies and, thus, the Trial Court lacked jurisdiction. The Trial Court overruled the Preliminary Objections.

On February 17, 2016, Mother filed a Third Amended Complaint against School District. After the completion of discovery, School District filed a Motion for Summary Judgment, which the Trial Court denied. On July 5, 2017, Mother voluntarily withdrew her common law tort claims, leaving only the gender and race discrimination claims under the PHRA.

Beginning on July 31, 2017, the Trial Court held a six-day bench trial. At the conclusion of trial, School District orally moved for the entry of a compulsory nonsuit.[5] Once again, School District argued that the Trial Court lacked jurisdiction over Mother's PHRA claims because she failed to timely file an Administrative Complaint with the Commission. School District also argued that Mother's discrimination claims against School District based on student-on-student harassment are not cognizable under the PHRA.

On August 7, 2017, following oral argument by the parties, the Trial Court granted School District's Motion for Compulsory Nonsuit and issued its ruling from

---

[5] Pennsylvania Rule of Civil Procedure 230.1(c) governs compulsory nonsuits at trial and states:

> In an action involving more than one defendant, the [Trial C]ourt may not enter a nonsuit of any plaintiff prior to the close of the case of all plaintiffs against all defendants. The nonsuit may be entered in favor of (1) all of the defendants, or (2) any of the defendants who have moved for nonsuit if all of the defendants stipulate on the record that no evidence will be presented that would establish liability of the defendant who has moved for the nonsuit.

Pa. R.C.P. No. 230.1(c).

4

the bench.[6]  The Trial Court concluded that, under controlling Pennsylvania Supreme Court precedent, Mother's failure to timely file her Administrative Complaint with the Commission deprived the Trial Court of jurisdiction.  Notes of Testimony (N.T.), 8/7/17, at 45.  The Trial Court also concluded that Section 5533(b)(1) of the Judicial Code, 42 Pa. C.S. § 5533(b)(1), commonly known as Pennsylvania's Minority Tolling Statute,[7] did not apply to Mother's Administrative Complaint.  *Id.* at 48-50.  The Trial Court further rejected Mother's assertion that equitable tolling should apply, as the evidence did not support the application of equitable tolling.  *Id.* at 50-52.  Finally, the Trial Court found that neither the Commission nor Pennsylvania courts have recognized discrimination claims under the PHRA based on student-on-student harassment and, therefore, the "[T]rial [C]ourt may not create causes of action or impose remedies to statutory schemes."  *Id.* at 52-53.

---

[6] A different trial judge presided over the bench trial and ruled on School District's Motion for Compulsory Nonsuit than the trial judge who had entered the various pre-trial Orders.

[7] The Minority Tolling Statute provides:

(i) If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced.  Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter.

(ii) As used in this paragraph, the term "minor" shall mean any individual who has not yet attained 18 years of age.

42 Pa. C.S. § 5533(b)(1).

Mother timely filed a Post-Trial Motion to remove the nonsuit, which the Trial Court denied on September 14, 2017. On October 4, 2017, the Trial Court entered Judgment in School District's favor. Mother now appeals to this Court.[8]

## Issues

(1) Can a minor state a cause of action for discrimination based on student-on-student harassment under the PHRA?

(2) Does the equitable tolling provision in Section 12(e) of the PHRA, 43 P.S. § 962(e),[9] toll a minor's claim under the PHRA?

(3) Does the Minority Tolling Statute apply to PHRA claims?

(4) Did the Trial Court abuse its discretion in excluding Mother's evidence at trial without considering the elements of her claims?

## Parties' Arguments on Appeal

First, Mother argues that the Trial Court erred in concluding that the PHRA does not provide a cause of action for discrimination based on student-on-student harassment. According to Mother, the PHRA does not allow school districts to ignore – and thus condone – severe or pervasive harassment based on a protected characteristic. Rather, the PHRA prohibits school districts from "indirectly" denying a child educational privileges and advantages based on gender or race. Mother asserts that the PHRA's ban on indirect discrimination requires a school district to intervene when it knows that a child is suffering severe or pervasive harassment based on one of these protected characteristics. Such harassment denies a child the educational

---

[8] Our scope of review on appeal from the denial of a post-trial motion to remove a compulsory nonsuit is limited to determining whether the Trial Court abused its discretion or committed an error of law. *Thomas v. City of Phila.*, 804 A.2d 97, 102 n.7 (Pa. Cmwlth. 2002).

[9] Section 12(e) of the PHRA states that "[t]he time limits for filing under any complaint or other pleading under this act shall be subject to waiver, estoppel and equitable tolling." 43 P.S. § 962(e).

6

privileges and advantages of a safe, non-hostile school environment, and a school district indirectly discriminates against a child if it knows he is suffering such a denial but fails to take corrective measures.

Next, Mother argues that Section 12(e) of the PHRA provides for equitable tolling, which applies when a party, through no fault of his or her own, is unable to assert his or her rights in a timely manner. Mother argues that this principle applies to minor victims of discrimination, such as N.B., who are legally unable to assert their rights until the age of 18. Further, Mother argues that even if Section 12(e) of the PHRA does not toll a minor's rights under the PHRA, Pennsylvania's Minority Tolling Statute applies. The Minority Tolling Statute suspends the limitations period for any claim for which a minor is entitled to bring a civil action.

Finally, Mother argues that the Trial Court abused its discretion in excluding certain of Mother's evidence at trial as irrelevant. Because the Trial Court found that Mother's claims were not cognizable under the PHRA, it never considered the elements of her indirect discrimination claims.

In response, School District argues that the Trial Court correctly concluded that it lacked jurisdiction over Mother's PHRA claims because she did not file her Complaint with the Commission within 180 days of the alleged discrimination as required by Section 9(h) of the PHRA. Under long-standing Supreme Court precedent, Mother's failure to file a timely Administrative Complaint precluded her from subsequently filing her PHRA claims in a court of law. Controlling Supreme Court precedent also forecloses Mother's claim that the Minority Tolling Statute extended her time for filing an Administrative Complaint with the Commission.

School District also argues that even if Mother had timely filed her Administrative Complaint, her discrimination claims arising from student-on-student harassment are not cognizable under the PHRA. No Pennsylvania appellate court has

7

found that the PHRA imposes liability on school districts for student-on-student conduct. According to School District, Mother's policy arguments for imposing such liability under the PHRA are both unconvincing and misplaced. To the extent that a policy argument could be made for imposing liability on school districts for the unlawful conduct of third parties, that argument must be made to the legislature, not the courts.

Finally, School District argues that Mother's challenge to the Trial Court's evidentiary rulings is waived because she fails to cite relevant portions of the record or pertinent legal authority in her brief.

## Analysis

The Trial Court concluded that it lacked jurisdiction over Mother's PHRA claims due to the untimeliness of Mother's Administrative Complaint. We will therefore address the timeliness issue first, as it is dispositive of the appeal.

Under Section 12(c)(1) of the PHRA, 43 P.S. § 962(c)(1), an individual alleging discrimination under the PHRA may "bring an action in the courts of common pleas" for legal or equitable relief. It is well settled, however, that an individual may seek relief in court only if he or she has exhausted his or her administrative remedies under the PHRA. Section 12(c)(1) of the PHRA states:

> In cases involving a claim of discrimination, *if a complainant invokes the procedures set forth in [the PHRA]*, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year *after the filing of a complaint with the Commission*, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice *the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by [the PHRA]*.

8

43 P.S. § 962(c)(1) (emphasis added); *see Clay v. Advanced Comput. Applications, Inc.*, 559 A.2d 917, 918-20 (Pa. 1989) (holding that to assert a cause of action in court for wrongful discharge under the PHRA, an aggrieved party must first utilize the administrative remedies available through the Commission, finding the PHRA's administrative procedures mandatory, not discretionary); *Lukas v. Westinghouse Elec. Corp.*, 419 A.2d 431, 455 (Pa. Super. 1980) ("[T]he rationale of the principle of exhaustion of administrative remedies, applicable to other areas of administrative law, is also applicable to actions brought under [S]ection [12](c) of the PHRA.").

The first requirement for exhaustion of remedies under the PHRA is the filing of a complaint with the Commission within 180 days of the alleged discrimination. Section 9(h) of the PHRA, 43 P.S. § 959(h). In *Vincent v. Fuller Co.*, 616 A.2d 969 (Pa. 1992), our Supreme Court explained the consequence of filing an untimely administrative complaint under the PHRA as follows:

> In *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989),  this Court held that persons with claims that are cognizable under the [PHRA] *must* avail themselves of the administrative process of the Commission *or be barred from the judicial remedies authorized in Section 12(c) of the [PHRA]*.  This rule of "exhaustion of remedies" has long been applied by the courts of this Commonwealth to claims under the [PHRA].  *See, e.g., Carney v. Commonwealth, Pennsylvania Human Relations Commission*, 45 Pa. Commw. 10, 404 A.2d 760 (1979).  *By necessary implication, one who files a complaint with the Commission that is later found to be untimely cannot be considered to have used the administrative procedures provided in the [PHRA].*  To hold otherwise would be to permit any complainant to bypass the administrative mechanism established by the legislature by merely allowing the [PHRA's] limitation period to pass, filing a complaint that would inevitably be dismissed, and then commencing an action in court.

*Id.* at 974 (emphasis added).  The *Vincent* Court held that because the plaintiff failed to timely file his complaint with the Commission, "he was foreclosed from asserting

those claims in his action in common pleas court." *Id.* Thus, *Vincent* makes clear that the filing of an untimely administrative complaint precludes the subsequent pursuit of legal and equitable relief in court.

Here, it is undisputed that Mother filed her Administrative Complaint with the Commission two years and two months after the last alleged act of discrimination against N.B., well beyond the PHRA's 180-day time limit. Recognizing that her Administrative Complaint was untimely filed, Mother contends that the 180-day period was tolled by N.B.'s status as a minor. Specifically, Mother advocates the application of two tolling doctrines: (1) equitable tolling under Section 12(e) of the PHRA and (2) the Minority Tolling Statute. We conclude that neither doctrine applies in this case.

### 1. Equitable Tolling

Mother first argues that N.B.'s status as a minor tolled the 180-day period for filing an Administrative Complaint with the Commission because Section 12(e) of the PHRA expressly provides for "equitable tolling." Section 12(e) of the PHRA states that "[t]he time limits for filing under any complaint or other pleading under this act shall be subject to waiver, estoppel *and equitable tolling*." 43 P.S. § 962(e) (emphasis added). Mother maintains that, because the PHRA should be liberally construed, Section 12(e) of the PHRA "shields children from the PHRA's limitation periods" and "it is fair to read 'equitable tolling' in [Section 12(e) of the PHRA] as protecting children." Mother's Br. at 33-35. We disagree.

In interpreting the equitable tolling provision in Section 12(e) of the PHRA, this Court has specified that an administrative complaint filed beyond the 180-day window may be permitted "where the defendant actively misleads the plaintiff regarding the cause of action[,] where extraordinary circumstances prevent the plaintiff from asserting his rights[,] and where a plaintiff has asserted his rights in a timely fashion, but in the wrong forum." *Uber v. Slippery Rock Univ. of Pa.*, 887 A.2d 362, 366 (Pa.

10

Cmwlth. 2005); *accord Quest Diagnostics Venture, LLC v. Com.*, 119 A.3d 406, 413 n.6 (Pa. Cmwlth. 2015). Here, Mother cites no evidence to support the application of any of these categories of equitable tolling recognized by our Court.

Instead, Mother contends that equitable tolling applies in this case *merely because N.B. is a minor*. In effect, Mother asserts that N.B.'s minority status is an "extraordinary circumstance" justifying the application of equitable tolling to his PHRA claims. However, Mother has cited no legal authority, nor have we found any, stating that the equitable tolling provision in Section 12(e) of the PHRA incorporates tolling on the basis of a person's status as a minor. Contrary to Mother's contention on appeal, equitable tolling and minority tolling serve distinct purposes and are not interchangeable.

This distinction is demonstrated by two appellate decisions that pre-date the enactment of the Minority Tolling Statute. In *DeSantis v. Yaw*, 434 A.2d 1273 (Pa. Super. 1981),[10] a minor plaintiff filed an action in trespass and sought to toll the two-year limitations period under equitable principles. The Superior Court noted that Pennsylvania law does not allow a minor to bring a cause of action on his own behalf; rather, a minor is dependent upon a parent or guardian to initiate a claim on his behalf. *Id.* at 1276-77. While it expressed concern that a minor may lose his ability to bring a cause of action based on his parents' failure to timely file suit, the *DeSantis* Court concluded that it was bound by existing precedent and statutory authority linking the minor's claims with the parents' claims for statute of limitations purposes. *Id.* at 1275. Therefore, the Superior Court held that the minor plaintiff's cause of action was barred

---

[10] Although decisions of the Pennsylvania Superior Court are not binding on this Court, they may serve as persuasive authority. *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

by the two-year limitations period. *Id.* at 1277.[11] The *DeSantis* Court found no authority for waiving the statute of limitations based solely on the plaintiff's minority status, absent specific statutory language imposing that right. *See id.* at 1276 (stating that "that the 'general rule' provides no special protection to infants, absent a statutory provision"); *accord Redenz by Redenz v. Rosenberg*, 520 A.2d 883, 886 (Pa. Super. 1987) (holding that the plaintiff's minority status was not a basis for applying equitable tolling to his negligence cause of action, which accrued before the Minority Tolling Statute's effective date). Thus, both *DeSantis* and *Redenz* support the conclusion that a plaintiff's status as a minor does not toll the statute of limitations *unless* the legislature has expressly provided for minority tolling.

In contrast, the doctrine of equitable tolling protects any party who, "through no fault of [his] own, is unable to assert [his] rights in a timely manner." *DaimlerChrysler Corp. v. Com.*, 885 A.2d 117, 119 n.5 (Pa. Cmwlth. 2005), *aff'd per curiam*, 927 A.2d 201 (Pa. 2007). Historically, our courts have applied equitable tolling to causes of action alleging tortious conduct where the plaintiff, through no fault of his own, was unaware of, or unable to discover, his injury or its cause in a timely manner. *See, e.g., DEEK Inv., L.P. v. Murray*, 157 A.3d 491, 497 (Pa. Super. 2017) (recognizing that equitable tolling may apply "[i]f through fraud or concealment the defendant causes the plaintiff to relax his or her vigilance or deviate from his or her right of inquiry"); *Glover v. State Farm Mut. Auto. Ins. Co.*, 950 A.2d 335, 339 (Pa. Super. 2008) (noting that if the defendant "had actively misled" the plaintiff, "then the statute of limitations may be equitably tolled"). Furthermore, "equitable tolling is permitted under the

---

[11] The *DeSantis* Court went so far as to criticize then-existing precedent, which held that minors were subject to the same statutes of limitations as adults, and implored the Pennsylvania legislature to "rethink the law in this area and seriously consider change." 434 A.2d at 1279. Subsequently, in 1984, the General Assembly enacted the Minority Tolling Statute, which extends the time for minors to file civil actions until they reach the age of majority, as discussed *infra*.

discovery rule *only when, despite the exercise of due diligence, the injured party is unable to know of the injury or its cause*." *O'Kelly v. Dawson*, 62 A.3d 414, 420 (Pa. Super. 2013) (emphasis added); *see Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997) (recognizing that the discovery rule is a form of equitable tolling, which applies when the plaintiff does not know or cannot reasonably detect the existence of an injury within the prescribed limitations period).

In this case, Mother alleged that she learned of the harassment, as well as N.B.'s injury, as early as November 4, 2011. *See* Third Am. Compl., ¶ 70; Mother's Br. at 14. Even under traditional equitable tolling principles, Mother would have been required to file her Administrative Complaint with the Commission within 180 days of that date, or by May 2, 2012. However, Mother did not file her Administrative Complaint until almost two years later, in January 2014. To date, Mother has failed to explain why she waited more than two years after learning of N.B.'s harassment to seek administrative relief with the Commission. In fact, the Trial Court found that "if [Mother] had any reason to explain why [her Administrative C]omplaint was filed three years late, these reasons should have been presented in [her] case in chief. However, no such evidence was presented during [the] trial . . . ." N.T., 8/7/17, at 51-52.

Therefore, we conclude that the equitable tolling provision in Section 12(e) of the PHRA did not apply to Mother's Administrative Complaint.

### 2. Minority Tolling Statute

Next, Mother argues that the Minority Tolling Statute tolled the 180-day period for the filing of her Administrative Complaint. The Minority Tolling Statute provides:

(i) *If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced.* Such person shall have the same time for commencing an

13

action after attaining majority as is allowed to others by the provisions of this subchapter.

(ii) As used in this paragraph, the term "minor" shall mean any individual who has not yet attained 18 years of age.

42 Pa. C.S. § 5533(b)(1) (emphasis added). School District contends that, by its plain language, the Minority Tolling Statute applies only to "civil actions" filed in court and not to administrative proceedings before the Commission. We agree with School District.

In *East v. Workers' Compensation Appeal Board (USX Corp./Clairton)*, 828 A.2d 1016 (Pa. 2003), the Pennsylvania Supreme Court addressed this same question in the context of a workers' compensation claim and held that the Minority Tolling Statute *did not apply* to administrative proceedings before a workers' compensation judge. The Supreme Court concluded that workers' compensation proceedings are not "civil actions" and, therefore, are not encompassed by the Minority Tolling Statute. *Id.* at 1021-23. The *East* Court explained its reasoning as follows:

> While Claimant is correct that the Legislature has failed to specifically define the term "civil action", the term appears in more than five hundred separate legislative provisions. While the parties have provided no assistance in the task, our examination of each of these has revealed persuasive evidence that the Legislature uses the term in a way that does not encompass proceedings before the workers' compensation authorities. *Most revealing in this regard are those provisions in which "civil actions" are expressly distinguished from "administrative proceedings", thereby demonstrating that the former excludes the latter.* The majority of these statutory exemplars express the understanding that *"civil actions" are those commenced and conducted in a court of record, involving traditional common law claims for damages or equitable relief governed by the Pennsylvania Rules of Civil Procedure.*

*Id.* at 1021-22 (internal footnotes omitted) (emphasis added); *see also* 1 Pa. C.S. § 1991 (defining "action" as "any suit or proceeding in any court of this Commonwealth"); 42

Pa. C.S. § 102 (defining "action" for purposes of the Judicial Code as "any action at law or in equity").

Although *East* involved a workers' compensation proceeding, rather than a proceeding before the Commission, the Supreme Court's explanation of why such proceedings are distinct from "civil actions" does not foreclose *East*'s application to other categories of administrative proceedings. For example, in *V.S. v. Department of Public Welfare*, 131 A.3d 523 (Pa. Cmwlth. 2015), this Court considered whether the Minority Tolling Statute applied to a minor's untimely appeal from a decision of the Department of Public Welfare (Department). The minor argued that the Department should have tolled the statutory appeal period until she turned 18. After examining the Supreme Court's decision in *East*, we affirmed the Department's decision, concluding: "It is evident that the General Assembly and the courts have deemed the Minor Tolling Statute *applicable to matters in which a minor initiates a civil lawsuit in a court of record*, and not those in which a minor is appealing from an administrative decision." *Id.* at 534 (emphasis added); *see also Pittsburgh Water & Sewer Auth. v. Gladstone*, 999 A.2d 1248, 1253 (Pa. Cmwlth. 2010) (concluding, in a case involving a statutory appeal from an administrative decision, that administrative proceedings and civil actions "have different substantive and procedural provisions and remedies, and that the tribunals vested with original jurisdiction and initial appellate jurisdiction are likewise distinct").

Furthermore, the General Assembly's decision to explicitly incorporate into the PHRA one form of tolling (equitable tolling) but not another (minority tolling) also supports the conclusion that the 180-day period is not tolled due to the complainant's status as a minor. *See, e.g., L.S. ex rel. A.S. v. David Eschbach, Jr., Inc.*, 874 A.2d 1150, 1155-56 (Pa. 2005) (applying the statutory construction principle of *expressio unius est exclusio alterius*, which provides that "the express mention of one meaning

15

in a statute implies the exclusion of other meanings"). As School District correctly points out in its brief, the General Assembly amended the PHRA in 1991 to provide that administrative complaints under the PHRA "shall be subject to waiver, estoppel and *equitable tolling*." 43 P.S. § 962(e) (emphasis added). The General Assembly did not, however, expressly provide for minority tolling in the PHRA. As explained earlier, these doctrines are not interchangeable. We agree with School District that a plaintiff's minority status tolls the statute of limitations only when the General Assembly has expressly provided for minority tolling, as it did for "civil actions" in the Minority Tolling Statute.

Mother also argues that this Court should apply the Minority Tolling Statute to her PHRA claims because federal district courts have applied the Minority Tolling Statute to federal civil rights claims. *See, e.g., Gaudino v. Stroudsburg Area Sch. Dist.*, (M.D. Pa., No. 3:CV-12-2159, filed July 23, 2013), 2013 U.S. Dist. LEXIS 102382, at *14-16; *Weidow v. Scranton Sch. Dist.*, (M.D. Pa., No. 3:08-CV-1978, filed August 19, 2009), 2009 U.S. Dist. LEXIS 73622, at *20-21; *Seneway v. Canon McMillan Sch. Dist.*, 969 F. Supp. 325, 329-30 (W.D. Pa. 1996); *Faison v. Sex Crimes Unit*, 845 F. Supp. 1079, 1084 (E.D. Pa. 1994). However, none of these cases applied the Minority Tolling Statute to the filing of an *administrative complaint*, nor did they involve the exhaustion of *state administrative remedies*. Rather, each case involved application of the Minority Tolling Statute to a civil action initiated in a court of law under federal statutes. Consequently, we find that Mother's reliance on these cases is misplaced.

Finally, Mother contends that because the PHRA permits an aggrieved party to "bring an action in the courts of common pleas . . . for legal or equitable relief," 43 P.S. § 962(c)(1), the Minority Tolling Statute applies to her cause of action filed in the Trial Court. Relying exclusively on a footnote in *Fancsali v. University Health Center of Pittsburgh*, 761 A.2d 1159, 1164 n.6 (Pa. 2000), Mother argues that the Minority

Tolling Statute "suspend[s] the running of any limitation period for any claim that accrues while a person is a minor." We reject this claim.

Mother's assertion is contrary to both the language of the PHRA and our Supreme Court's holdings in *East* and *Vincent*. Section 12(c)(1) requires that "a complainant invoke[] the procedures set forth in [the PHRA]" before pursuing relief in the courts of common pleas. Allowing Mother's PHRA claims to proceed in the Trial Court, despite the untimely filing of her Administrative Complaint with the Commission, would contravene the PHRA's well-defined administrative procedures, as well as binding Supreme Court precedent.

Based on the PHRA's statutory language and the controlling precedent, we conclude that the Minority Tolling Statute does not apply to the filing of an Administrative Complaint with the Commission.[12]

## Conclusion

Because Mother filed an untimely Administrative Complaint with the Commission, and neither equitable tolling nor the Minority Tolling Statute applies, we conclude that the Trial Court lacked jurisdiction over her PHRA claims.[13] Accordingly, we affirm the Trial Court's Judgment.

 

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[12] At oral argument before this Court, Mother's counsel asserted that minority tolling should apply to discrimination claims under the PHRA for public policy reasons, as advocated by the organizations that filed briefs as *amici curiae* in support of Mother's appeal. However, we cannot disregard the General Assembly's determination, as conveyed in the Minority Tolling Statute and as interpreted by our Supreme Court, that minority tolling should apply only to civil actions.

[13] In light of this conclusion, we do not reach the issues of whether Mother's indirect discrimination claims are cognizable under the PHRA or whether the Trial Court made erroneous evidentiary rulings at trial.

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Nicole B., individually and | : | |
| on behalf of N.B., | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 868 C.D. 2018 |
| | : | |
| School District of Philadelphia, | : | |
| Jason Johnson and Jala Pearson | : | |

O R D E R


AND NOW, this 17th day of December, 2018, the Judgment of the Court of Common Pleas of Philadelphia County, entered on October 4, 2017, is hereby AFFIRMED.


_____
ELLEN CEISLER, Judge